GILBERT PLEET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22911. Promulgated July 27, 1951.

*Edward N. Polisher, Esq.*, for the petitioner.
*William H. Best, Jr., Esq.*, for the respondent.

### OPINION.

TIETJENS, *Judge:* Respondent determined a deficiency of $7,737.73 in petitioner's gift tax for the calendar year 1945 from which determination petitioner appeals.

The petitioner assigns error in respondent's disallowance of a claimed specific exemption of $30,000 for the year 1945 and determination of net gifts in the amount of $50,732.18 for preceding years in ascertaining the total net gifts for the purpose of computing 1945 gift tax liability. In connection therewith and more particularly, petitioner assigns error in respondent's determination (1) that the payment by petitioner of insurance premiums during 1935 on policies on the life of his father, which policies were held in a trust created by the father for the benefit of certain persons including petitioner,

constituted a gift for gift tax purposes and, in the alternative, if the payment was a gift, that petitioner was not entitled to *$5,000* exclusion from such gift; and (2) that a transfer in trust under a 1934 agreement by petitioner and his brother, of insurance policies taken out by them on the life of their father, constituted a completed gift upon the death of the insured in 1937, instead of upon the transfer in trust in 1934.

At the hearing petitioner conceded that in computing gift tax liability for 1945, he is not entitled to an allowance in that year of any portion of the $30,000 specific exemption theretofore claimed and allowed in determining net gifts for preceding years. Also at the hearing, petitioner conceded the correctness of respondent's adjustment of the value of the gift for 1937, if it be determined herein that the transfer in trust was a completed gift in that year.

This cause was submitted on a stipulation and exhibits which are adopted as our findings of fact.

The petitioner, a resident of Philadelphia, Pennsylvania, filed a gift tax return for each of the years 1935, 1937, and 1945 with the collector of internal revenue for the first district of Pennsylvania. The 1935 return reported a gift of the value of $5,512.92 as the amount of premiums paid on life insurance policies held in trust; an exclusion of $5,000; net gifts of $512.92 for that year; and no net gifts for preceding years. The 1937 return, made under protest, reported a gift of the value of $71,536.75 as the actuarial value upon the father's death in 1937 of life insurance policies transferred in trust in 1934; an exclusion of $5,000; a specific exemption of $40,000; net gifts of $26,536.75 for that year; and no net gifts for preceding years. The 1945 return reported a gift of property to petitioner's wife of the value of $42,500; an exclusion of $3,000; a specific exemption of $30,000; net gifts of $9,500 for that year; and no net gifts for preceding years.

In asserting the deficiency in controversy the respondent determined that petitioner's net gifts for preceding years amounted to $50,732.18 and his total net gifts amounted to $90,232.18 for the purpose of computing the 1945 gift tax liability. For the year 1935 respondent determined a net gift of $5,512.92 after disallowing the claimed exclusion of $5,000 on the ground that the gift was one of a future interest. For the year 1937 respondent increased the 1937 actuarial value of the insurance policies transferred in trust from the reported $71,536.75 to the amount of $80,219.29; allowed the claimed $5,000 exclusion and $40,000 specific exemption; and determined a net gift of $35,219.26. In computing net gifts for preceding years respondent included the sums of $5,512.92 for 1935 and $35,219.26 for 1937 and in addition thereto the sum of $10,000 representing the amount

by which the specific exemption of $40,000 previously claimed and allowed exceeded the $30,000 specific exemption provided for by section 1004 (a) (1), Internal Revenue Code as amended by section 455 of the Revenue Act of 1942,[1] thus computing the above-mentioned amount of $50,732.18 as net gifts for preceding years. For the year 1945 respondent after disallowing the claimed specific exemption of $30,000, determined a net gift of $39,500 for that year and total net gifts in the above-mentioned amount of $90,232.18 on which he computed the asserted gift tax liability for 1945.

The two issues raised by the more particular assignments of error, set forth at the outset of this opinion, will be discussed separately.

## Issue No. 1.

On April 17, 1934, Abraham Pleet, petitioner's father, executed a trust agreement with the Fidelity-Philadelphia Trust Company as trustee and transferred by assignment to the trustee ten policies of life insurance, upon his own life, having a total cash surrender or loan value of $92,239.91 at that time and a total value of $315,000 at maturity. Those policies earned annual dividends of $3,594.67 and $3,208.40 during the years 1934 and 1935, respectively.

The trust, by its terms, was irrevocable except that if both of the settlor's sons, Herbert and Gilbert, predecease him the settlor shall have the right to alter, revoke, or change all or any trusts therein declared. Further, the trust instrument provided, inter alia, that upon maturity of any and all of the life insurance policies by death of the settlor or prior thereto, the trustee shall collect the proceeds thereof and hold the same in trust for the specified purposes; that the sum of $500 be paid to the settlor's chauffeur and each of the daughters of Louis Pleet if living at settlor's death; that two separate sums of $35,000 be set aside by the trustee and the income therefrom be paid

---

[1] SEC. 1003. NET GIFTS.

(a) GENERAL DEFINITION.—The term "net gifts" means the total amount of gifts made during the calendar year, less the deductions provided in section 1004.

\*     \*     \*     \*     \*     \*     \*

SEC. 1004. DEDUCTIONS.

In computing net gifts for the calendar year 1942 and preceding calendar years, there shall be allowed (except as otherwise provided in paragraph (1) of subsection (a)) such deductions as are provided for under the gift tax laws applicable to the years in which the gifts were made.

In computing net gifts for the calendar year 1943 and subsequent calendar years, there shall be allowed as deductions :

(a) RESIDENTS.—In the case of a citizen or resident—

(1) SPECIFIC EXEMPTION.—An exemption of $30,000, less the aggregate of the amounts claimed and allowed as specific exemption in the computation of gift taxes for the calendar year 1932 and all calendar years intervening between that calendar year and the calendar year for which the tax is being computed under the laws applicable to such years. This exemption shall be applied in all computations in respect of the calendar year 1942 and previous calendar years for the purpose of computing the tax for the calendar year 1943 or any calendar year thereafter.

\*     \*     \*     \*     \*     \*     \*

to the settlor's two sisters during their respective lives and thereafter such sum to become a part of the principal of the trust; that the balance of the principal of the trust be held, invested, and reinvested, and the income therefrom be paid to the settlor's wife, Lena Pleet, during her life; that upon the death of the survivor of settlor and his wife "to pay the said net income equally unto Settlor's sons, Herbert Pleet and Gilbert Pleet, for and during the terms of their respective lives" and upon the death of each son, whether before or after the death of the survivor of settlor and his wife, to pay over at any time fixed for distribution thereof the principal of the trust represented by the deceased son's share had he been living, to his children and the issue of his children living at the time of distribution, per stirpes, and in default of such issue to pay over such son's share to the survivor of settlor's sons, absolutely, and in default of either son or his issue living at time of distribution to distribute the then principal of the trust as provided by the laws of Pennsylvania had settlor then died possessed thereof in fee; that the trustee assumed no liability for the payment of premiums or other charges which may become due upon the policies; that upon death of settlor his sons, Herbèrt and Gilbert, shall become co-trustees with the same powers, discretions and duties as the corporate trustee; and further, as follows:

\*     \*     \*     \*     \*     \*     \*

FOURTH: Any and all dividends due from time to time upon any and all policies of insurance held hereunder shall be payable to Trustee and the receipt of Trustee for such dividends shall be a full and complete discharge therefor to the insurance companies issuing the policies upon which the respective dividends are so paid. Any and all dividends so received by Trustee shall be paid over by Trustee to Herbert Pleet, son of Settlor, or upon directions from him, in writing, shall be applied by Trustee in reduction of·premiums payable on the said policies of insurance.

In the event of the death, resignation or inability, for any reason, to act of the said Herbert Pleet, the said dividends shall be paid over by Trustee to Gilbert Pleet, son of Settlor, and the rights and privileges hereinabove given to the said Herbert Pleet shall be exercised by the said Gilbert Pleet. The decision of the Trustee in determining the inability of the said Herbert Pleet to act shall be final and for the exercising of this discretion in determining such inability Trustee is hereby absolved from any and all liability.

During such time as Settlor's sons, Herbert Pleet and Gilbert Pleet shall both be living Trustee shall at any time and from time to time, upon receipt of written directions signed by both of them, borrow such amount or amounts as Settlor's said sons may agree upon on such insurance policy or policies held hereunder as Settlor's said sons shall agree upon, the amount or amounts so received by Trustee to be paid over equally and absolutely to Settlor's said sons.

After the death of either of Settlor's said sons, Trustee shall at any time and from time to time, upon receipt of written directions signed by the survivor of Settlor's said sons, borrow such amount or amounts on such insurance policy or policies held hereunder as the survivor of Settlor's said sons shall indicate, the

amount or amounts so received by Trustee to be paid over to the survivor of Settlor's said sons absolutely.

\* \* \* \* \* \* \*

NINTH: Trustee is hereby authorized to pay at any time, and from time to time, any portion or portions of the principal of the funds held In Trust hereunder unto or for the account of any beneficiary, or any descendant of Settlor, either for comfortable maintenance and support for educational requirements, illness, operations, or for any reason whatsoever which shall to Trustee, in its discretion, seem sufficient. Any payments so made shall, as far as is practicable in the discretion of Trustee, be charged against the share of principal represented by the individual benefited thereby, either at the time of such payment or at the time of any subsequent division or distribution of the said fund.

In 1935 petitioner paid $5,512.92 in premiums on the policies so held in trust, or one-third of the total premiums due that year. Petitioner's gift tax return filed for 1935 as above mentioned contained the following explanation:

During Calendar year 1935 premiums on said policies paid. by Lena Pleet, Herbert Pleet and Gilbert Pleet amounting to $16,538.77—in equal proportions; therefore assumed each share constitutes Gift in amount of $5,512.92 for which return is filed.

Briefly stated, petitioner contends that the insurance premium payment in 1935 did not satisfy the requisites of a gift, but instead was a payment made purely for the protection of petitioner's own substantial pecuniary interest as a beneficiary of the trust which held the insurance policies and therefore did not constitute a taxable gift, and he cites *Grace R. Seligmann*, 9 T. C. 191, as controlling. In that case the taxpayer, the beneficiary of a trust to which her husband had transferred insurance policies on his life, paid the premiums on the policies and also interest on loans thereon and it was held that such payments having been made to protect the taxpayer's own pecuniary interest in the policies, did not constitute taxable gifts.

The respondent contends that when petitioner made the 1935 premium payment there were present all the elements of a valid "gift" as that word has been variously defined, citing *Estate of Lorenzo W. Swope*, 41 B. T. A. 213, 218; *Commissioner* v. *Montague*, 126 F. 2d 948; and *Commissioner* v. *Wemyss*, 324 U. S. 303; which definitions may be briefly condensed, as a voluntary or gratuitous transfer of property by one as a competent donor to another as donee without any valuable consideration therefor accompanied by a clear intention on the part of the donor to divest himself of title and dominion over the subject matter of the gift and an acceptance of the gift by or on behalf of the donee. Respondent argues that there was a transfer of property or money by the petitioner; that there was a donative intent which is established by petitioner's having filed a gift tax return reporting the premium payment as a gift made in 1935; and that there

was a donee capable of taking a gift and an acceptance thereof; and further that the facts herein distinguish the instant proceeding from the *Seligmann* case, *supra*.

In approaching the problem presented by this issue, we are aware that the term "gift" for purposes of the Federal gift tax has been given a broad and comprehensive meaning and that it is not always necessary to find a donative intent before a transfer can be taxed as a transfer by gift. See *Commissioner* v. *Wemyss*, *supra*. However, with respect to any donative intent in the instant case, respondent points to the filing of 1935 gift tax return as establishing such intent. In our opinion, the filing of the return, with the explanation made therein, amounts to nothing more than petitioner's cautionary legal conclusion that a return should be filed and does not prove his intent to make a gift at the time the payment was made. Further, we note that respondent's argument fails to name any specific donee who was capable of taking and did accept the petitioner's payment as a gift.

There are factual similarities and differences between the instant case and *Seligmann*, *supra*, but we think the differences are not significant and that the principles of that case are controlling here. In both cases the settlor transferred insurance policies on his own life in trust with the trustee assuming no liability for payment of premiums and designated the wife, if she survived him, as the primary beneficiary for life and designated the children or their issue as the beneficiaries after the wife's death. In the *Seligmann* case specified payments were to be made to all beneficiaries, in their appointed turn, out of income and principal until exhaustion of the latter, while in the instant case the beneficial payments to the settlor's wife for life and thereafter to the children for life were to be made only out of income leaving the corpus of the trust for the remainderman entitled thereto upon termination and distribution of the trust corpus which at the time of the maturity of the policies would amount to approximately $315,000. In the instant case all beneficiaries had a certain present interest in the trust corpus under the provision whereby the trustee was authorized to pay at any time any portions of the principal unto or for the account of any beneficiary, or any descendant of the settlor, for comfortable maintenance and support, etc., or for any reason it deemed sufficient. In the instant case petitioner's brother Herbert had a present interest in the right to receive from the trustee all dividends paid on all policies and in the event of Herbert's death or inability to act the petitioner succeeded to that right. Moreover, and in our opinion, a crucial fact in the instant case, the petitioner together with his brother Herbert had a present substantial pecuniary interest in the policies held in trust, from the day it was created until the policies matured, under the provision whereby the trustee was

directed at any time and from time to time, to borrow on the policies such amounts as directed by Herbert and petitioner acting jointly while both are living or as directed by the survivor of them and pay over the proceeds "equally and absolutely to Settlor's said sons" while both are living or "to the survivor of Settlor's said sons absolutely," and at the time the trust was created the cash surrender or loan value of the policies amounted to over $92,000. In our opinion, the last mentioned beneficial interest of petitioner, standing alone, constituted a more substantial pecuniary interest in the policies in the year in which premiums on the policies were paid by petitioner than was true as the principal beneficiary in the *Seligmann* case and thus the petitioner's 1935 premium payment was made to advance or protect his own financial interest. Furthermore, in the instant case, as it was pointed out in the *Seligmann* case, there is no identifiable donee as a recipient of a gift, certainly not the insurance companies, nor the settlor, nor the trust itself, and if other beneficiaries of the trust indirectly derived a benefit through a payment to the insurance companies as a consideration for maintaining the policies in full force, that is an immaterial circumstance.

The cases cited by respondent are not applicable here. In *Smith* v. *Shaughnessy*, 318 U. S. 176, the question was whether a transfer of property in trust constituted a taxable gift and it was held that the grantor had made a completed gift except for the value of his reversionary interest. In *Chittenden* v. *Hassett*, (D. Mass., 1943), the question involved was whether the *grantor* of a trust in which his wife had a beneficial interest, made a taxable gift to the wife in paying premiums on a policy held by the trust and it was held that a taxable gift was thereby made to the extent of the wife's interest in the policy and premiums. It may be noted that in the *Seligmann* case we distinguished *Frances P. Bolton*, 1 T. C. 717, on the ground that there it was the grantor of the trust who paid the insurance premiums while no longer having any interest in the policies held in trust.

On the authority of *Grace R. Seligmann, supra*, we hold that petitioner's payment of $5,512.92 insurance premiums on policies held in trust did not constitute a taxable gift in 1935 and that respondent erred in including that amount in petitioner's net gifts for preceding years in ascertaining the total net gifts for the purpose of computing petitioner's 1945 gift tax liability. This conclusion obviates the necessity of passing upon the alternative issue of whether petitioner was entitled to a $5,000 exclusion, had the payment in question been held to be a gift in 1935.

### Issue No. 2.

On June 9, 1934, petitioner and his brother Herbert owned four insurance policies in the face amount of $300,000 on the life of their

father, Abraham, and on that date, the total interpolated reserve value of the policies plus unearned premiums was $45,135.45.

On June 9, 1934, the two brothers executed a trust agreement with a corporate trustee to which the four policies were transferred either by assignment thereof or by designation as beneficiary thereunder, subject however to termination upon certain events or revocation by the exercise of powers reserved by the settlors. The trustee assumed no liability for payment of premiums or other charges upon the policies which the settlors agreed to pay. The terms of trust imposed upon the trustee and its duties, powers, and obligations thereunder pertained primarily to a period of time immediately following the trustee's collection of the proceeds of the policies.

With respect to the beneficial interests under the trust, the instrument provided, inter alia, that "the proceeds of the policies * * * when collected by Trustee" be held in trust, invested and reinvested, and the net income be paid to settlors' mother, Lena Pleet, for life; that upon her death the net income be paid equally to the settlors during their respective lives with provision that either settlor could withdraw absolutely two-thirds of the share of the principal represented by him; that upon the death of each settlor, whether before or after the death of Abraham or Lena, to pay the net income from the share of the principal represented by the deceased settlor to his wife and/or children in a specified manner, with the remainder interest in his share of the principal being distributable to his children or their appointees by will or their issue.

With respect to termination or revocation of the trust in part or in toto prior to the collection of the proceeds of the policies, the instrument provided as follows:

\* \* \* \* \* \* \*

TENTH: If any policy included under this agreement shall mature or lapse before the death of Abraham Pleet, Settlors, or the survivor of them, shall be permitted to collect and receive the proceeds of such policy, free and clear of any and all trusts.

ELEVENTH: All benefits, privileges and options available to Settlors under the policy contracts prior to the decease of Abraham Pleet, except as herein otherwise provided, shall be for the sole benefit of Settlors, or the survivor of them, and shall not be subject to this trust, Settlors hereby expressly reserving unto themselves jointly, or to the survivor of them, and by their act alone, or the act of the survivor of them alone, without the consent or approval or joinder of Trustee or any beneficiary of this trust (but not in limitation of any other option or privileges they may have) full power:

(a) To change the beneficiary of or assign any policy held hereunder.

(b) To obtain and receive from the respective Insurance Companies advances or loans available under any policy held hereunder.

(c) To accept, collect and receive in cash, or otherwise dispose of all distributive shares of surplus or dividends which may be allotted and set apart to any policy held hereunder.

If the beneficiary under a policy is changed, or if any policy is surrendered, such act shall have the effect of revoking this trust with respect to such policy.

\* \* \* \* \* \* \*

THIRTEENTH: \* \* \* Should both Settlors die in the lifetime of Abraham Pleet the policy contracts held hereunder shall be assigned by Trustee to Abraham Pleet, free and clear of all trusts, and this agreement shall thereupon be null, void and of no effect.

\* \* \* \* \* \* \*

SIXTEENTH: Settlors, or the survivor of them, shall have the right at any time, and from time to time, before the death of Abraham Pleet, by an instrument or instruments executed under their hands and seals, or under the hand and seal of the survivor of them, and to take effect in their lifetime, or the lifetime of the survivor of them, to amend, revoke or change all or any of the trusts herein declared, and to make such new uses and trusts as to them or the survivor of them shall seem fit; provided, however, that the duties, powers and liabilities of Trustee shall not be changed without its written consent.

In the event of the revocation of this agreement as aforesaid it is hereby agreed that the insurance policies held hereunder shall be delivered jointly to Settlors, or to the survivor of them, as the case may be, and the joint receipt of Settlors, or the receipt of the surviving Settlor, as the case may be, for such policies shall be a full and complete discharge to Trustee for any and all responsibility and/or liability under this Agreement and/or as to the said insurance policies.

The trust remained unrevoked when Abraham Pleet, the insured, died on August 1, 1937, and shortly thereafter the total proceeds of the policies held in trust, amounting to $302,718, were collected by the trustee.

In ascertaining petitioner's net gifts for preceding years for the purpose of computing the gift tax liability for the taxable year 1945, the respondent determined that the transfer in trust constituted a completed taxable gift in the year 1937, as had been reported on petitioner's gift tax return for that year, except that respondent made an adjustment in value. The petitioner contends that the respondent erred for the reason that the transfer in trust was complete for gift tax purposes on June 9, 1934, rather than upon the death of the insured in 1937.

The petitioner argues that while the trust was subject to revocation at any time prior to the death of the insured, yet the revocation required the joint action of petitioner and his brother Herbert and the latter had a substantial interest adverse to the revocation in that if he survived petitioner he acquired the sole right to exercise the benefits, privileges and options with respect to the policies as reserved under the eleventh article of the trust and also the sole right of revocation and thereby complete ownership of all the policies free of the trusts as reserved under the sixteenth article of that instrument.

The only question to be decided, under this issue, is whether Herbert had such a "substantial adverse interest," that is, an interest which

he would not lightly relinquish, so as to effectively fetter petitioner's reserved right of revocation. See *Commissioner* v. *Prouty*, 115 F. 2d 331, *Burnet* v. *Guggenheim*, 288 U. S. 280. If so, the gift was complete when the transfer was made in trust on June 9, 1934, as contended by petitioner and if not, then, under the facts herein, the transfer became a completed gift upon the death of the insured in 1937, as determined and now contended by respondent.

In our opinion the terms of the trust instrument evidence a clear intent on the part of the settlors *not* to make a completed gift of the policies in trust for the beneficiaries specified therein until the event of the insured's death, at which time the face amount of the policies matured and the settlors' powers of revocation ceased. Prior to the happening of that event there was no abandonment by the settlors of economic control over the property they put in trust, which is the essence of a taxable gift by transfer in trust, *Smith* v. *Shaughnessy*, *supra*, and cases cited therein. Instead, the settlors made provision for recapture of the property or modification in its disposition to others than the named beneficiaries and, further, they made such provision applicable to both brothers so equally that neither could be said to have any advantage over the other in terms of a substantial *adverse* interest. While it is true that from the viewpoint of petitioner if he predeceased Herbert prior to any joint revocation or modification of the trust the latter had a substantial interest in the property in that Herbert could then exercise the privileges and options under all the policies tantamount to ownership thereof or exercise the power of revocation and acquire actual ownership of all the policies, under articles 11 and 16 of the trust, for the sole benefit of himself or his family, nevertheless, petitioner had a similar substantial interest if Herbert predeceased him. Those interests so counterbalanced each other that neither was *adverse* to the other. The record is silent as to the respective ages of the brothers and there is no evidence as to their relative life expectancies, or otherwise, as to which may have had the better chance of survival. But be that as it may, here we have a trust established by the joint action of the brothers with joint participation therein by themselves and their families if the trust stood and, further, in the event of joint revocation prior to the death of the insured each would recapture the property he had originally contributed. Clearly the rights and interests of petitioner and Herbert were mutual and reciprocal, for they stood as equals in all respects and neither brother would gain any advantage by opposing a revocation proposed by the other. As a practical matter, by such opposition he would run the chance of losing all should he predecease his brother.

Moreover, it must be noted that under article 10 of the trust instrument and at all times prior to the insured's death the settlors, who

were individually obligated to pay the premiums necessary to keep the policies in full force, could lapse the policies and collect the proceeds thereof according to their respective shares free and clear of all trusts. That provision did not require joint action by the brothers.

Under the facts we conclude and find that neither of the co-settlor brothers had a substantial adverse interest in the trust. Accordingly, we hold that respondent correctly determined that the transfer in question became a completed gift upon the death of the insured in 1937, for the purpose of ascertaining petitioner's net gifts for years preceding the taxable year 1945. With respect to the value of such gift in 1937, petitioner concedes the correctness of respondent's adjustments. Further, since petitioner claimed and was allowed a deduction for the full amount of the specific exemption for the 1937 gift, he concedes the correctness of respondent's disallowance of any portion of the $30,000 specific exemption claimed on his 1945 gift tax return.

*Decision will be entered under Rule 50.*