Mabel S. Berger v. Commissioner.
Mabel S. Berger v. Commissioner
Docket No. 29388.
United States Tax Court
1951 Tax Ct. Memo LEXIS 5; 10 T.C.M. (CCH) 1255; T.C.M. (RIA) 51371; December 29, 1951
*5 Grant N. Nickerson, Esq., for the petitioner. William C. W. Haynes, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: This proceeding arises from respondent's determination of gift tax deficiencies for the years 1935 to 1944, inclusive, and for 1946 in the amounts of $63.99, $228.16, $332.50, $436.44, $545.43, $715.33, $837.99, $1,793.03, $1,822.53, $1,855.29, and $1,932.42, respectively. The sole issue remaining, after concessions by the parties, is whether petitioner made taxable gifts by paying all the premiums falling due in the taxable years on insurance policies upon her husband's life, the policies constituting the principal of a trust of which petitioner was not the sole beneficiary. All of the facts are stipulated The stipulated facts are hereby found accordingly. [The Facts] Petitioner filed her gift tax returns for the years involved with the collector of internal revenue for the district of Connecticut. Under date of December 31, 1934, petitioner's husband, George W. Berger, hereinafter called Grantor, executed and delivered a trust agreement with the First National Bank & Trust Company of New Haven as Trustee. The subject *6 matter of the trust consisted of 15 policies of insurance upon the life of the Grantor. The total face value of the policies was $363,000. As of that date the total of the paid-up insurance upon all of the policies was $121,585. The gross annual premiums payable with respect to the policies aggregated $11,986.12. The agreement between petitioner's husband as Grantor and the bank as Trustee stated that by written agreement dated May 19, 1931, they had contracted that proceeds of certain life insurance policies upon the Grantor's life should be held by the Trustee; and that the prior agreement had provided in part that the Grantor reserve to himself during his life all benefits of any kind which might accrue on account of the policies, plus the right to assign the policies, and that the Grantor could modify, alter, or terminate that agreement. The instrument stated that the Grantor now desired to revoke and terminate the privilege reserved to himself by virtue of those provisions in the prior agreement; and that he desired now to establish a trust which should irrevocably divest himself and his estate of all right in the above policies. The instrument provided that the parties agreed *7 that the new agreement was to be substituted in place of the prior agreement. The Grantor transferred to the Trustee, absolutely and irrevocably, the above policies with all incidents of ownership. The latter was to hold the policies during the Grantor's life. Sums payable under the policies prior to the Grantor's death were to be used to pay premiums and to be held, invested, and added to the principal. Sums payable after his death were to be held, invested, and applied as directed. The instrument provided that upon the Grantor's death the Trustee should pay over the net income and principal as follows: The Grantor's mother, Isabelle F. Berger, was to receive $3,000 a year during her natural life. The entire balance of the net income was to be paid to petitioner during her life, and if petitioner survived Isabelle, then after the latter's death petitioner was to receive the entire net income during her life. After petitioner's death $3,000 a year was to be paid to the Grantor's mother-in-law, Mrs. F. E. Sims, during her life, and $3,000 a year to the Grantor's sister-in-law, Mrs. Fazakerley, during her life. After the death of Mrs. Sims or Mrs. Fazakerley, $5,000 a year was to be *8 paid to the survivor during the remainder of her life. After petitioner's death and until the death of the survivor of Isabelle F. Berger, Mrs. Sims, and Mrs. Fazakerley, net income in excess of that required for the above payments was to be divided among the Grantor's brothers and sisters or among their issue, living at the time of each distribution. Upon the death of the last survivor of the Grantor and petitioner, Isabelle Berger, Mrs. Sims, and Mrs. Fazakerley, the trust fund was to be divided among the Grantor's brothers and sisters then living, or if the latter were deceased, leaving issue, then to their issue per stirpes. If at the time of the death of the last survivor of the above-named individuals, there should be living no brother or sister of the Grantor and no issue then surviving of any such brother or sister, then the Trustee was to pay over the trust fund to itself as Trustee in trust for the charitable uses and upon the conditions contained in the provisions of the Declaration of Trust adopted by the Board of Directors of the Trustee creating The New Haven Foundation. The agreement of December 31, 1934, and trusts therein established, were stated to be irrevocable *9 and not subject to modification. On December 31, 1934, the following persons named in the trust agreement were living, and their respective ages were and birth dates are as follows: Grantor, age 54, born October 7, 1880; petitioner, age 53, born June 28, 1881; Isabelle F. Berger, age 72, born January 5, 1862; Mrs. F. E. Sims, age 74, born December 23, 1860; Edna S. Fazakerley, age 50, born October 12, 1884. Isabelle F. Berger died on June 26, 1945, and Mrs. Sims died on March 27, 1938. On December 31, 1934, there were living and now are living the following brothers and sisters of Grantor and their respective ages were and dates of birth are as follows: D. Spencer Berger, age 51, born February 16, 1883; Gertrude B. Champagne, age 49, born August 18, 1885; Florence Versoy, age 45, born April 16, 1889; Ruth Crawford, age 43, born March 6, 1891; Wendell P. Berger, age 41, born July 6, 1893. During all of the years involved petitioner paid all premiums falling due with respect to the above policies of life insurance. Premiums on all policies issued by mutual insurers were paid net after crediting the previous years' dividends. All of the policies were and now are in good standing *10 and not in default as to payment of premiums. The respective values of cash surrender and paid-up insurance of each policy as of its respective anniversary date for each of the years from 1935 to 1950, inclusive, have been stipulated. During the period from June 11, 1950, to June 12, 1951, the Trustee was not provided with funds to pay premiums and during that period, pursuant to authority conferred by the trust instrument, the Trustee borrowed upon the various insurance policies the total sum of $10,894.75 to pay premiums falling due within that period. [Opinion] Petitioner's gift tax returns for the years 1935 to 1944, inclusive, and for 1946 showed no net gifts and no tax due with respect to each year. Petitioner's gift tax return for 1945 showed no tax due. Respondent's notice of deficiency stated: "* * * It is held that the premium payments made by you constituted gifts of the entire value of the said premium payments, less the present worth of your rights therein under the provisions of the trust agreement. * * *" Respondent's determination of the value of gifts made by petitioner was based upon values for petitioner's retained rights in the premiums paid which were *11 computed correctly under actuarial methods. For the years 1935 to 1946, inclusive, the total amounts of premiums paid by petitioner, the actuarially computed amounts above mentioned, and the differences between those amounts which respondent determined to constitute gifts, are as follows: Calendar
Amount of
Actuarial
Year
Premiums
Amounts
Difference
1935
$10,938.73
$2,406.52
$8,532.21
1936
10,614.10
2,274.92
8,339.18
1937
10,655.13
2,223.41
8,431.72
1938
10,600.10
2,151.93
8,448.17
1939
10,617.61
2,095.49
8,522.12
1940
10,532.79
2,019.45
8,513.34
1941
10,399.77
1,935.19
8,464.58
1942
10,516.07
1,897.62
8,618.45
1943
10,517.22
1,838.52
8,678.70
1944
10,634.02
1,799.18
8,834.74
1945
10,644.04
1,741.26
8,902.78
1946
10,652.72
1,683.24
8,969.48
Petitioner, by her payments of premiums on the insurance policies in question, did not intend to make gifts during the years in controversy to anyone, including the other beneficiaries of the trust. As in , we find lacking here the requisite donative intent to justify treatment as a taxable gift of petitioner's payment of *12 premiums on the trusteed policies. Her beneficial interest was at all times subtantial, subject only to the death of the insured, her husband. By use of such mechanical approaches as mortality tables and discounted values, respondent computes her interest at less than the sum of her many years' contributions of premium payments. Such devices are more appropriate to computing the values of unmistakable gifts than for assaying human motivation. On the same theory a creditor could be criticized for carrying insurance on the life of a debtor who refuses to die young. Once the possibility of the premature death of her husband is accepted, petitioner's payments assume the aspect of reasonable protection against her own personal misfortune which in the antithesis of a gift to someone else. See . Decision will be entered under Rule 50.