## COMMISSIONER OF INTERNAL REVENUE v. BERGER.

No. 83, Docket 22443.

United States Court of Appeals Second Circuit.

Argued Dec. 10, 1952.

Decided Jan. 6, 1953.

Grant N. Nickerson, New Haven, Conn., for respondent on review, Mabel S. Berger.

Before AUGUSTUS N. HAND and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The stipulated facts as found by the Tax Court, 10 T.C.M. 1255, are as follows: In 1934 the taxpayer's husband created an irrevocable trust of fifteen insurance policies on his life. The face value of the policies amounted to $363,000 and their paid-up value was $121,585. The grantor transferred ownership in the policies to the trustee and all sums payable prior to the grantor's death under the policies were to be used to pay premiums and to be added to the principal. Under the terms of the trust, upon the grantor's death his mother was to receive $3,000 a year for her life, the taxpayer was to receive the balance of the income and, upon the death of her mother-in-law, she was to receive the entire income for life. Following the taxpayer's death, her mother and sister if living were to receive $3,000 a year for life; on the death of one the survivor's income was to become $5,000. Income in excess of that required for these payments was to be divided among the grantor's brothers and sisters or their issue. The remainder was to be divided among the grantor's five brothers and sisters or, if any were deceased, among their issue *per stirpes*. If no brothers, sisters or their issue survived the trust fund was to be held for certain charitable uses.

During each of the years involved the taxpayer paid all premiums falling due with respect to the policies of life insurance. Premiums on all policies issued by mutual insurers were paid net after crediting the previous year's dividends. The taxpayer's gift tax returns for the years 1935–44 and for the year 1946 showed no net gifts and no tax due with respect to each year. The taxpayer's gift tax return for 1945 showed no tax due.

The Commissioner's notice of deficiency stated: "It is held that the premium payments made by you constituted gifts of the entire value of the said premium payments,

Ellis N. Slack, Acting Asst. Atty. Gen., L. W. Post, Sp. Asst. to the Atty. Gen., for petitioner Commissioner of Internal Revenue.

less the present worth of your rights therein under the provisions of the trust agreement." The Commissioner's determination of the value of the gifts made by the taxpayer was based upon values for the taxpayer's retained rights in the premiums paid which were computed correctly under actuarial methods.[1]

 The tax court held that the taxpayer, by her payments of premiums on the insurance policies in question, did not intend to make gifts to anyone, and it accordingly overruled the Commissioner's determination. It based its decision upon the absence of a donative intent on the part of the taxpayer. In Commissioner of Internal Revenue v. Wemyss, 324 U.S. 303, 65 S.Ct. 652, 89 L.Ed. 958, however, the Supreme Court held that the absence of a donative intent did not preclude taxation of a transfer as a gift under § 1002 of the Internal Revenue Code, 26 U.S.C. § 1002. Likewise the indefiniteness of the donees has been held not to avoid the payment of the gift tax, which is primarily imposed upon the transfer of property by the donor rather than upon its receipt by the donee. Robinette v. Helvering, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700; see U. S. Treas. Reg. 108, § 86.3(a). Consequently, reliance upon this fact in previous Tax Court decisions holding that no gift tax was payable has been erroneous. Pleet v. Commissioner, 17 T.C. 77, Acq. 1952–6 Int.Rev.Bull. 1; Seligmann v. Commissioner, 9 T.C. 191, Acq. 1947–2 Cum.Bull. 4.

The absence of donative intent would seem to be especially irrelevant in cases of family transactions where the eventual estate tax of the donor would be reduced by the transfer. Since the gift tax is designed to supplement the estate taxes, see Estate of Sanford v. Commissioner, 308 U.S. 39, 44, 60 S.Ct. 51, 84 L.Ed. 20, although taxation under both is not always precluded, see Smith v. Shaughnessy, 318 U.S. 176,

179, 63 S.Ct. 545, 87 L.Ed. 690, § 1002 should be construed to reach non-business transactions even in the absence of a donative intent where the effect otherwise would be to avoid both gift and estate taxes on the transfer of property. A transfer of all incidents of ownership of insurance policies to a trustee, and payment of the premiums by someone other than the insured would result in no estate tax under § 811(g)(2). Consequently, a contrary result in the instant case would open an easy avenue of tax avoidance through the use of such a device.

 Moreover, even if the existence of a donative intent were pertinent, the taxpayer has failed to sustain her burden of proof by showing its absence. See Merchants National Bank v. Commissioner, 320 U.S. 256, 261, 64 S.Ct. 108, 88 L.Ed. 35; Commissioner of Internal Revenue v. Disston, 325 U.S. 442, 449, 65 S.Ct. 1328, 89 L. Ed. 1720. In a family trust situation a donative intent is more likely to exist than in other cases. Payments far in excess of the amount required to secure an equivalent protection of the taxpayer are obviously not payments in the ordinary course of business, at least as to the excess, within the meaning of U.S.Treas.Reg. 108, § 86.8, designed to exclude bad business bargains made at arm's length from the tax imposed by § 1002, which might otherwise be thought to come within the literal language of that section. No intention to secure repayment from the other beneficiaries of the amount of premiums in excess of the value to the taxpayer of her interest in the trust which she was protecting was shown. The existence of a gift in cases where a co-owner pays off a tax lien would seem to depend on whether eventual recovery of the proportionate share of the payment was anticipated.

The government's actuarial computation gave the taxpayer credit for the value to

[1]

| Calendar Year | Amount of Premiums | Actuarial Amounts | Difference |
|---|---|---|---|
| 1935 | $10,938.73 | $2,406.52 | $8,532.21 |
| 1936 | 10,614.10 | 2,274.92 | 8,339.18 |
| 1937 | 10,655.13 | 2,223.41 | 8,431.72 |
| 1938 | 10,600.10 | 2,151.93 | 8,448.17 |
| 1939 | 10,617.61 | 2,095.49 | 8,522.12 |
| 1940 | 10,532.79 | 2,019.45 | 8,513.34 |
| 1941 | 10,399.77 | 1,935.19 | 8,464.58 |
| 1942 | 10,516.07 | 1,897.62 | 8,618.45 |
| 1943 | 10,517.22 | 1,838.52 | 8,678.70 |
| 1944 | 10,634.02 | 1,799.18 | 8,834.74 |
| 1945 | 10,644.04 | 1,741.26 | 8,902.78 |
| 1946 | 10,652.72 | 1,683.24 | 8,969.48 |

her in each year of her interest in the trust that she was protecting. These were found to be correct by the tax court and do not seem to be disputed here. We think it clear that the amount of premiums in excess of the value to the taxpayer of her interest in the trust was a gift. The equivalent could have been obtained by her by making substantially smaller payments, for example, through the purchase of policies on her husband's life in a lesser amount to be used to purchase an annuity upon his death.

The judgment of the Tax Court is reversed.