Joseph F. SAVAGE, Lesley Andrew, and Daniel Creem Savage, as Executors of the Last Will and Testament of Edna Savage Becker, Deceased, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

No. 61–C–75.

United States District Court
E. D. New York.

Aug. 2, 1963.

Arthur M. Boal and Francis J. Fitzpatrick, New York City (Boal, McQuade & Fitzpatrick, New York City, of counsel), for plaintiffs.

Rufus E. Stetson, Jr., Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith and David A. Wilson, Jr., Attys., Dept. of Justice, and Joseph P. Hoey, U. S. Atty., and Stanley P. Meltzer, Asst. U. S. Atty., of counsel), for defendant.

DOOLING, District Judge.

The plaintiff executors sue for refund of estate tax claimed to have been illegally exacted through the erroneous inclusion in the decedent's taxable estate of the proceeds of certain life insurance decedent had taken out on the life of her first husband, who predeceased her by many years; decedent had, before her husband died, directed the insurer to pay the interest on the insurance proceeds to her for life and thereafter to hold them for her children; the Government, under the 1939 Code, Section 811(c) (1) (B), asserts that the insurance proceeds are includible in decedent's estate as property decedent transferred upon her husband's death to her children retaining for her own lifetime the right to the income from the proceeds. It is concluded that the insurance proceeds are so includible.

The decedent, Edna Savage Becker, in 1924–1925 insured her first husband's life for $125,000. She paid the premiums as they fell due; she reserved to herself alone the right to surrender the policy for cash, borrow on it, change the beneficiary and make and alter choices among the Settlement Options contained in the policy. At the time the policy issued in 1924–1925, however, it embodied the only designation of beneficiary and the only choice of Settlement Option that decedent ever made; they were never changed. By that designation she directed that, if she survived her husband, the Company was to retain the proceeds of the policy and pay the interest on the amount so retained to her for life and then pay it, in equal parts, for their lives to those of her children by her first husband who survived her; the several parts of the principal amount of the policy she directed to be paid to the estate of each child at its death. Alternative provisions accelerated the children's interests on the contingency of decedent's having predeceased her husband, provided for issue of a deceased child's taking if any child predeceased decedent, and provided for payment of the principal to decedent's estate if she survived her husband, all her children and all their issue.

Decedent's first husband died on April 18, 1931. That event matured the policy and terminated absolutely the decedent's

rights, theretofore existing, to change the beneficiaries or alter the settlement option.

The decedent and four children of the marriage survived decedent's first husband. The insurance proceeds were, as provided in the designation, "retained" by the Company and interest on the amount so retained was paid to decedent until her death some twenty-three years later in 1954. Then interest on the retained amount was paid in equal parts to the four children of decedent's first marriage until one died, whereupon part of the principal was paid to that child's estate. The Company still "retains" the balance of the insurance and pays interest on it to the three surviving children.

The Commissioner of Internal Revenue included the principal amount of the life policy in decedent's taxable estate on the ground that the income from the "Monies on deposit" with the insurance company was payable to the decedent during her lifetime and hence the "Monies on deposit" were within Internal Revenue Code, 1939, Section 811 (c) (1) (B). That section requires that the value of the decedent's gross estate shall be determined by including (*inter alia*) the value at the time of death of all property.

"To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \*

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom. \* \* \*"

Plaintiffs, in answer, contended that if the insurance transaction involved was a transfer of an interest in property by the decedent—and they deny that it was—then the transfer was so far complete when the last premiums were paid in January 1931 that the transaction comes within the excepting language of Section 811(c) which reads:

"Subparagraph (B) shall not apply to a transfer made before March 14, 1931. \* \* \*"

The Government argues that the exception is inapplicable because decedent made no transfer until her husband died on April 18, 1931: until then there was nothing in which meaningful interests in others could be or were created by transfer or otherwise; when decedent's husband died and only then, and by that event, was decedent's transfer of property effected and, since she retained the life income in the property transferred, it remained taxable to her estate under Section 811(c) (1) (B) (i).

The plaintiffs further contend that the insurance transaction is not a "transfer" transaction at all: decedent did not at any time have a right to the proceeds of the policies that she could or did transfer; the death of decedent's husband brought the proceeds into existence and irrevocably vested her with only the life interest in them, vested her children with remainder life interests and vested their estates with the principal proceeds; before the husband's death no proceeds nor right to them existed; at and after her husband's death decedent did not own and could not transfer the proceeds or the right to the proceeds. The transaction, plaintiffs say, resembles the exercise of a general power of appointment before March 3, 1931—by executing the unchanged 1924–1925 designation—over unowned property; Section 811(f) (1) includes in gross estate property with respect to which a power is exercised by the decedent

"by a disposition which is of such a nature that if it were a transfer of property owned by the decedent,

such property would be includible in the decedent's gross estate under subsection (c) * * *; but the failure to exercise such a power * * * shall not be deemed an exercise thereof."

Since, plaintiffs say, Section 811(f) (1) thus taxes unowned property affected by an exercise of a power only if that exercsie equates with a transfer of owned property taxable under (c) (that is, a transfer after March 3, 1931 of owned property with income reserved for life to the transferor), and since Section 811(f) (1) demands an exercise (and not a non-exercise) of the power to produce its effect on taxability and treats that exercise as the "disposition" equating with the "transfer" of subsection (c), it follows that, if any part of Section 811 applies here, it is Section 811(f) (1) and that subsection, making the date of "exercise" critical, completes the case for non-taxability, for the only "exercise" here was the designation of 1924–1925, that was the "disposition" (analogous to a "transfer" of owned property) and there was no later designation or "disposition" or "transfer". The argument, emphasizing the special nature of insurance contracts in contrast to transfers made in formal trust, accomplishes no more than to shift the focus of analysis from the word "transfer" in Section 811 (c) (1) (B) to the word "disposition" in Section 811(f) (1). The problem remains, unilluminated by any real sidelight cast by Section 811(f) (1).

The insurance proceeds here differ mechanically from intrusted funds. The premiums paid aggregated not more than $27,072.50 and the cash surrender-and loan-value of the policy when decedent's husband died was of the order of $12,690.00. The "proceeds" of the policy, $126,046.25, were not the premium payments in specie nor the policy's cash surrender and loan value with nothing added except the investment earnings of the reserve on the policy computed upon the premium payments less all apportionable costs. The "proceeds" were the performance of a purely contractual promise to pay upon the death of the insured; the promise, made for a certainly adequate consideration, was aleatory and not the direct exchange equivalent of the premium payments in the same sense that goods bought are the barter equivalents of the price paid for them. Yet decedent's acts and payments, and hers only, produced the promise the day the policy issued, have kept it unconditionally extant and in full force down to date and procured as the performance due to her as promisee the entire series of interest payments and that part of the proceeds that the insurer has paid. Decedent had an insurable interest, she insured it against the contingency that happened, she paid the premiums, she retained all contract rights until the contingency insured against occurred and she gave to the insurer's promise to pay, owed to her, its beneficial direction, retaining until her husband died the right to change the direction and amount of her beneficence. When the contingency insured against occurred, the insurer commenced to discharge its duty to her by initiating performance of the promise that decedent purchased and had controlled since the issuance of the policy. Nothing relevant to the context of this case emanates from the insurer nor can turn on a difference between "premiums" and "proceeds"; the insurer's actuarial complexities, its means of keeping its accounts in balance, are irrelevant here; it suffices here to be clear that the insurer is simply a promisor, that it was legally bound to the decedent to perform its promise and that its performance of that promise is, for the purposes of this case, the decedent's act, her procurement.

It follows that for purposes of Section 811(c) (1) (B) (i) the total of decedent's acts effected a "transfer" not later than the date her husband died and those acts effected such a transfer as, if all the events had occurred after March 3, 1931, would subject the "proceeds" of the policy, rather than the premiums paid or the cash surrender value, to inclusion in decedent's estate even though she performed her last per-

sonal act with respect to the property before her husband died and before there were any "proceeds" in existence. In re Pyle's Estate, 3d Cir., 313 F.2d 328; cf. Schwartz v. United States, E.D.La., N.O.D., 1959, 170 F.Supp. 2, 6; Worthen v. United States, D.Mass.1961, 192 F. Supp. 727. The inclusion of the "proceeds" in taxable estate (where all the acts occur after March 3, 1931) is a consequence of the decedent's ownership of substantial rights in the insurance contract before its maturity and of his having effected a "transfer" through the union of acts performed when the decedent still has dispositive power over the insurance with the later occurrence of the maturing contingency that at once both ends the power to make changes and fixes the insurer's obligation to pay all the full "proceeds", and interest on the amount of the proceeds until paid. Contrast Goodnow v. United States, Ct.Cls.1962, 302 F.2d 516 (particularly at p. 520) with In re Pyle's Estate, supra, (particularly 313 F.2d at p. 330). Cf. Chase National Bank v. United States, 2d Cir. 1940, 116 F.2d 625; Commissioner of Internal Revenue v. Berger, 2d Cir. 1953, 201 F.2d 171; Gilbert Pleet, 1951, 17 T.C. 77, 86–87; Estate of Julia Crawford Hovnor, 1961, 36 T.C. 337, 345, 348. The distinction between premiums paid and the proceeds of the contract bought with the premium payments, although critical in other contexts, such as determining the amount of the government's interest as a lienor of the property of the payer of the premiums (United States v. Bess, 1958, 357 U.S. 51, 78 S.Ct. 1054, 2 L. Ed.2d 1135; Commissioner of Internal Revenue v. Stern, 1958, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 29; Rowen v. Commissioner of Internal Revenue, 2d Cir. 1954, 215 F.2d 641; United States v. Behrens, 2d Cir. 1956, 230 F.2d 505), is, here, of no moment. The transfer, however disectable in time, was finally a transfer of the "proceeds" and the question whether that "transfer" or one that stands for it, though in a sense limited to being an alterable and revocable "transfer" of such policy interests as

are susceptible of "transfer" before the maturing contingency occurs, took place before or after March 3, 1931 is the dispositive question here.

The critical period is that following the payment of the last premium in January 1931. That was the last personal act of the decedent. The interests of the transferees, the children (and it is assumed that all four had then been born), were not unreal during the interval between the decedent's payment of the last premium and the date their father died notwithstanding that decedent could annul the children's interest by changing the beneficiary designation or surrendering the policy for cash; such interests as the children's are legally protected, even against creditors of the payer of the premiums in some circumstances. See, e. g., 1 Collier, Bankruptcy (14th Ed. 1962) 880 et seq., par. 6.16; 4 id. 1178 et seq., par. 70.23; N.Y. Insurance Law, McK.Consol.Laws, c. 28, § 166, subd. 1, third sentence. The difference between such interests and formal trust remainders in an already created but fully revocable trust expectant on their mother's death and contingent on their surviving their father and mother, is perceptible but easily exaggerated; in each case real values and legally recognized interests are present; and where, as here, so far as concerns the transferor the insurance contract is a special form of investment—unusual though it may be to think of it, strictly, as such—the expectant and contingent interests of the children are less real than in the case of the supposed comparable remainders in a revocable formal trust only to the extent that there may have been practical uncertainty that the insurance contract— the investment—would be retained in force until maturity; that it produced no life income to decedent until maturity is beside the point: its actuarial growth elements, dividends and the like, were real and inured to her before maturity.

Hence it may not be said that there was no transfer at all but only a plan that came into force for the first time when the policy matured. Real interests

were created and did exist between January 1931 and March 3, 1931 and they had been created by "transfer by trust or otherwise" for they originated with decedent's acts and funds and were, although contingently, vested in the children as decedent's designees and by virtue of decedent's designation.

■■■ If, in applying Section 811(c) (1), the occurrence before March 3, 1931 of any set of acts that fairly constitutes in some sense a "transfer" requires the conclusion that the "transfer" described by Section 811(c) (1) was made before March 3, 1931 and therefore was not taxable, even though the "transfer" was unrestrictedly revocable, the proceeds of the policy could not, here, be included in decedent's taxable estate. But the simple meaning of the "exception" is that it excepts certain transactions from the specific and distinctive operation of Section 811(c) (1) (B). It excludes from the class of transactions distinctively described in, and properly taxable only by reason of, the language added to Section 811(c) (1) (B) on March 3, 1931, all those "transfers" described in and, otherwise, taxable distinctively by reason of Section 811(c) (1) (B) that were "made before March 3, 1931". The congress meant both to disagree with and to relieve against the conclusion of Commissioner of Internal Revenue v. Church, 1949, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 that the language added on March 3, 1931 was needless superfluity and the transactions that the added language described were, retrospectively, taxable in any event.[1] The exception would not,

surely, except from the operation of Section 811(c) (1) (B) a sort of transfer not distinctively described in and (otherwise) taxable by reason of Section 811 (c) (1) (B) but, rather, distinctively described and taxed by another part of the Section, such as Section 811(d), describing lifetime transfers made by the decedent but revocable at the date of his death. Hence, in testing the application of Section 811(c) (1) (B) and the effect on its otherwise general application of the exception, only "transfers" distinctively described by Section 811(c) (1) (B) would be included and the requisite taxable occasions, the deaths of the decedents, would be taken as being any and every date after March 3, 1931. Otherwise, this exception though special to Section 811(c) (1) (B) would be distorted to apply to types of transactions to which Section 811(c) (1) (B) does not distinctively relate and to only some persons making "transfers" before and dying after March 3, 1931 rather than to all persons so situated. The types of "transfers" excepted must be so fixed and determinable (as "transfers" unambiguously within the distinctive description of Section 811(c) (1) (B)) on March 3, 1931 that in the case of every decedent dying after that date (having made a defined "transfer" before that date) it is at once and necessarily true that if he made such an "excepted transfer" before March 3, 1931, (within the meaning of the "exception's" use of "transfer") it is excluded from tax. But here, if decedent had died on March 4, 1931, or on any day before her husband died on April 18, 1931, the exception, if read to

---

1. See Commissioner of Internal Revenue v. Canfield's Estate, 2d Cir. 1962, 306 F.2d 1, 5. The Senate Report, after epitomizing the Church decision, the legislative history of the Joint Resolution of March 3, 1931 and the decision, in Hassett v. Welch, 1938, 303 U.S. 303, 58 S. Ct. 559, 82 L.Ed. 858, that the new language inserted in the counterpart of Section 811(c) (1) (B) by the Joint Resolution was not retroactive, continued:

"In the joint resolution of March 3, 1931, Congress created a new estate tax rule with respect to transfers after

March 3. It left unchanged the rule in effect for transfers before that date. It is the opinion of your committee that the old rule should have been continued in effect with respect to such transfers until changed by legislation. Since the rule has been changed by the Supreme Court in the Church opinion, your committee believes that the Congress should act to restore the estate tax law to what it was prior to the Church opinion." S.R. No. 831, 81st Cong.1st Sess., 2 U.S. Code Congressional Service, 1949, p. 2180.

operate on this "transfer", would exempt the policy values from tax though they were very plainly taxable as gross estate under Section 811(a) or as property revocably transferred within Section 811 (d) or as "insurance" (Cf. Chase National Bank v. United States, 1929, 278 U.S. 327, 335, 337, 49 S.Ct. 126, 73 L.Ed. 405; Reinecke v. Northern Trust Co., 1929, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410; Chase National Bank v. United States, 2d Cir. 1940, 116 F.2d 625; DuPont's Estate v. Commissioner, 3d Cir. 1956, 233 F.2d 210).

Smith v. United States, Ct.Cls.1956, 139 F.Supp. 305 treated a trust created before 1931 as, essentially, freely revocable and not, therefore, within the exception even though a life interest was reserved to the settlor. While the case must be regarded with reserve (Commissioner of Internal Revenue v. Canfield's Estate, 2d Cir. 1962, 306 F.2d 1, 8), it can be thought to have denied to a transaction distinctively described in and that was taxable before and after March 3, 1931 by reason of the counterpart of Section 811(d) an exception created for transactions distinctively described in and taxable by reason of the language added to Section 811(c) (1) (B) on March 3, 1931. (See Smith v. United States, supra, 139 F.Supp. at pp. 307–308). Studebaker v. United States, N.D.Ind., S.B.D., 1961, 195 F.Supp. 841, 1962, 211 F.Supp. 263 [2] proceeds on the same basis and must be regarded in much the same light as the Smith case.

Commissioner of Internal Revenue v. Ridgeway's Estate, 3d Cir. 1961, 291 F.2d 257, since it dealt with an interest distinctively described in and taxable by reason of the language of Section 811 (c) (1) (B) (ii), had no difficulty in concluding that the exception for transfers made before March 3, 1931 precluded its taxation; the terms of the power to change the recipients of the beneficence excluded beneficence to the transferor himself: his divestiture was complete, save for the non-beneficial power, and hence the transfer, unless within Section 811(c) (1) (B) (ii) was not within any subsection describing a transfer. Estate of Robert J. Cuddihy, 1959, 32 T.C. 1171 is, essentially, similar.

In Commissioner of Internal Revenue v. Canfield's Estate, 2d Cir. 1962, 306 F. 2d 1, the Court explicitly left open the treatment to be accorded a fully revocable transfer (306 F.2d at p. 8 and fn. 14) and demonstrated the unsoundness, as a matter of legislative interpretation, of any attempt to argue broadly that no "transfer" qualified under the exception unless it was "complete and irrevocable". The Court reviewed and placed in perspective the legislative history, rejected the Government's argument that the gift tax test for taxable transfers should be applied in the present context and held that a reservation of a possibly self-beneficial testamentary power of appointment over the corpus of a trust did not deprive the settlor's estate of the benefit of the exception otherwise available to it; the trust transfer was within the language of the counterpart of Section 811 (c) (1) (B) (i) and (ii).

It must be concluded that since the transfer of property here was fully revocable at the critical date and was not one which, had decedent died before her husband and after March 3, 1931, could have been held to be within the exception but was one which would rather have resulted in full taxation of the policy values under subsections other than Section 811(c) (1) (B), the exception does not relieve and the proceeds of the insurance are includible in gross estate under Section 811(c) (1) (B) (i).

Counsel are in agreement that plaintiffs are entitled to recover certain amounts of tax, in respect of administration expense incurred, at least, and in-

2. At 211 F.Supp. page 270, Column 2, line 10 the word "not" is a copying error—reversing the sense of the sentence. It should be wholly omitted from the quotation.

cluding the expense incident to the contest and litigation of the present tax. Accordingly the judgment may be settled on consent or on notice on or before September 20, 1963.