**FIRST–MECHANICS NAT. BANK OF TRENTON et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 7427.

Circuit Court of Appeals, Third Circuit.

Dec. 21, 1940.

Sydney A. Gutkin, of Newark, N. J. (Hannoch & Lasser, of Newark, N. J., of counsel), for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Newton K. Fox, Sp. Assts. to the Atty. Gen., for respondent.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

In computing, for federal tax purposes, the net estate of Arthur D. Forst, Sr., who died testate on April 2, 1934, resident in Trenton, New Jersey, the Commissioner of Internal Revenue disallowed as a deduction a claim made by a son of the decedent against the latter's estate which the executors paid with the approval and at the request of all of the living and sui juris beneficiaries under the decedent's will. The executors took credit for the payment in their final account and the account was approved in due course by the Orphans' Court of Mercer County, New Jersey, which had jurisdiction of the administration and distribution of the estate.

The Commissioner concluded that the merits of the claim had not been passed upon by the court of distribution in the manner necessary to constitute it, ipso facto, a legally deductible claim against the estate and that the son did not have a valid claim against the father. Accordingly, the Commissioner assessed a deficiency tax appropriate to the augmentation of the net estate by reason of the disallowance of the claim. On petition from the Commissioner's action, the Board of Tax Appeals, 40 B.T.A. 876, sustained the deficiency assessment. The decision of the Board is now here for review on the petition of the executors.

Forst, Sr., being the owner of a majority of the outstanding common and preferred no par stock of a New Jersey manufacturing corporation, entered into a written agreement with his son, Daniel P. Forst, on February 8, 1929, whereby the son agreed to purchase from the father 1,500 shares of the no par common stock at the book value thereof as of December 31, 1928, and to pay therefor with his promissory note bearing interest at six per cent. annually. The note was payable on demand but subject both as to demand and payment to the terms of the written agreement then entered into by the father and the son. The agreement provided that the stock should be transferred on the books of the company to the son, to whom certificates were to issue which he should thereupon endorse in blank and deposit with the father as collateral security for the payment of the note. The stock was to be released from the pledge in hundred share lots when the payments on account of principal aggregated, from time to time, an amount equal to the proportionate purchase price of 100 shares.

The agreement then provided: "The said note representing the purchase price of the said stock shall be paid and satis-

fied solely from dividends which shall in the future be declared and paid upon said stock, the amount of the dividends so paid to the * * * [father] shall be first credited to the payment of interest on said note and the balance, if any, shall be credited by the * * * [father] on the principal amount of said note and notations of principal and interest shall be made on the note. * * *"

It is the foregoing provision plus the son's subsequent action in respect of his note obligation which gives rise to the present question. No dividends on the stock were received by the son from September 30, 1929, to April 2, 1934 (the date of the father's death). Nevertheless, the son, notwithstanding the agreement, from time to time between July 1, 1929, and January 2, 1934, paid the father on account of interest on the note a total of $26,957.06, no part of which, as the son correctly avers, had been received by him as dividends on the stock. It was for this amount that the son made claim against the father's estate, alleging in the proof which he filed with the executors that he had made the payments under a mistake of fact as to the terms of the agreement.

The executors contend that the approval by the Orphans' Court of Mercer County of their final account in which they took credit for their payment of the son's claim conclusively determined a valid liability of the father to the son subsisting at the time of the father's death which is deductible in determining the net estate of the father subject to tax.

█ Unquestionably, a claim against a decedent's estate which is allowed by the laws of the jurisdiction under which the estate is administered is deductible in determining the net estate subject to federal tax. The Revenue Act applicable to the instant case specifically so provides. Sec. 303(a)(1) of the Revenue Act of 1926, 44 Stat. 9, as amended by Sec. 805 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, pages 232 & 643.[1]

█ However, to entitle a claim to deduction under the federal taxing statute on the ground indicated, it is necessary that the claim be established as a valid charge against the decedent's estate under the laws of the state. That is what the Revenue Acts contemplate and therefore require. Ordinarily, the decision of a state court, having jurisdiction of a decedent's estate, that such is the status of a particular claim is determinative of the validity of the claim. In such case, its deductibility from the gross estate for federal tax purposes follows automatically under the provisions of the Revenue Act. But, that is so only because the state court has passed upon the merits of the claim and has adjudicated its validity according to the laws of the state. The pertinent Treasury Regulation,[2] Art. 30

---

[1] Sec. 303 of the Revenue Act of 1926 as further amended by Sec. 805 of the Revenue Act of 1932 provides in material part:

"Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) such amounts—
* * * * * * *
"(C) for claims against the estate
* * * * * * *
"as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, * * *."

[2] Art. 30 of Treasury Regulations 80 (1934 Ed.) provides:

"Art. 30. Effect of court decree.—The decision of a local court as to the amount of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends. If the court does not pass upon such facts its decree will, of course, not be followed. For example, if the question before the court is whether a claim should be allowed, the decree allowing it will ordinarily be accepted as establishing the validity and amount of the claim. The decree will not necessarily be accepted even though it purports to decide the facts upon which deductibility depends. It must appear that the court actually passed upon the merits of the case. This will be presumed in all cases of an active and genuine contest. If the result reached appears to be unreasonable, this is some evidence that there was not such a contest, but it may be rebutted by proof to the contrary. If the decree was rendered by consent, it will be accepted, provided the consent was a bona fide recognition of the validity of the claim—not a mere cloak for a gift—and was accepted by the court as satisfactory evidence upon the merits.

of Regulations 80 (1934 ed.), correctly and competently applies the congressional intent, as expressed in Sec. 805 (1) (C) of the Revenue Act of 1932, in its recognition of the effect of a state court's allowance of a claim against a decedent's estate. The operation of the federal taxing act thus depends upon state law to the extent Congress so intended. Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199. But, Congress did not intend that a claim which could not be established on its merits as a valid liability of a decedent's estate should be accorded deduction for federal tax purposes merely because a state court approved, pro forma, the executors' payment of the claim, no sui juris interested party objecting. United States v. Mitchell, 7 Cir., 74 F.2d 571, 573. See also Buck v. Helvering, 9 Cir., 73 F.2d 760, 765, and Smith v. United States, D.C., 16 F.Supp. 397, 402.

The cases cited by the appellants confirm rather than reprobate the pertinent rule. Each of them was an instance where a state court had heard the merits and on that basis determined and settled property rights. Thus, in Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634, the state court considered and thereupon determined what was corpus and what was distributable as income; in Blair v. Commissioner, 300 U.S. 5, 57 S. Ct. 330, 81 L.Ed. 465, the state court likewise adequately considered and determined the validity of an assignment of the beneficiary's interest in a spendthrift trust; and in Sharp v. Commissioner, 303 U.S. 624, 58 S.Ct. 748, 82 L.Ed. 1087, the state court considerately concluded that certain property belonging to a trust estate created by a decedent in his lifetime and not to his estate.

■ Here, there was never an adjudication of the son's claim on its merits. The Orphans' Court of Mercer County had no alternative under the circumstances but to approve and confirm the executors' account. The only persons inter-

ested in the balance for distribution shown by that account were the beneficiaries under the decedent's will, by which the decedent's widow took a life interest in the residual estate with remainders over to the decedent's surviving children and their issue, per stirpes. The widow and children formally approved, and requested the executors to make, the payment. This, they might do, even though the claim was not legally enforceable, but their so doing cannot affect the tax liability of the estate. United States v. Mitchell, supra, 74 F.2d at page 573. The fact that no interested parties[3] objected to the executors' payment of the claim could not serve to give it the certain validity under the laws of the state which the Revenue Acts require as a prerequisite to a claim's deduction from a decedent's gross estate.

■ We have, then, to consider the claim on its merits. The son contends that in making the payments of interest on his note from funds not derived from dividends on the stock, he acted under a mistaken conception of the terms of the agreement between him and his father. The Board of Tax Appeals said in its opinion [40 B.T.A. 881],—"We do not think it can be seriously contended that Daniel P. Forst made these payments under a mistake of fact and could recover them for that reason, because the terms of the agreement and the note are clear and unambiguous and not susceptible of misunderstanding". The finding therein contained that the son did not make the payments under a mistake of fact is fully supported by the evidence. The terms of payment, conditioned upon the son's receipt of dividends, as specified in the agreement, are clear and unambiguous. The son could not be in default in his obligation under the note so long as dividends on the hypothecated stock were not paid. But it does not follow that the son was thereby precluded from otherwise discharging his note obligation to his father if he so chose. And that is precisely what the son did choose to do and what the father must have knowingly understood the son was doing when, with-

---

It will be presumed that the consent was of this character, and was so accepted, if given by all parties having an interest adverse to the claimant. The decree will not be accepted if it is at variance with the law of the State; as, for example, an allowance made to an executor in excess of that prescribed by statute."

[3] It does not appear that the contingent remainder interests of minor grandchildren or grandchildren in posse were represented.

out the son's receipt of dividends from the stock, the father received and accepted payments from the son on account of interest on the note. By so acting, the son waived nothing. He made a voluntary choice in his own interest. The father did not thereby acquire any right to require thenceforth payments by the son except out of dividends upon the stock.

The law of New Jersey that money paid under a mistake of fact may be recovered is neither denied nor disregarded. The rule happens not to be applicable to the facts of the present case. Here, the mistake of fact requisite to its applicability is entirely wanting. The Board of Tax Appeals so found, and no reason exists for disturbing that finding.

A controversy has arisen between counsel for the parties to the present appeal, growing out of a stipulation of facts entered into by them for use at the hearing before the Board of Tax Appeals. The appellants urge that it was stipulated that the son "made such payments through misunderstanding and a mistaken conception of the terms of said agreement". This is clearly a misinterpretation of the purport of the stipulation. In regard to the particular fact, it was merely agreed that subsequent to the father's death the son "lodged proof of claim for reimbursement", a copy whereof was attached to the stipulation as an exhibit. In the proof, as the exhibit disclosed, the son had averred that he made the payments "through misunderstanding and a mistaken conception of the terms of said agreement". What the stipulation admitted was that the son's proof of claim contained such an averment but it did not admit that the averment was true. The stipulation was not intended to be nor could it properly be construed as being substantive proof of the fact of mistake as alleged by the son. Consequently, the Board was not precluded thereby from drawing a conclusion to the contrary from the admitted facts. The legal effect of the indisputable facts, appearing of record, was for the Board, and for this court on review, regardless of the stipulation. Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 289, 37 S.Ct. 287, 61 L.Ed. 722; Commissioner v. Ehrhart, 5 Cir., 82 F.2d 338, 339.

The decision of the Board of Tax Appeals is affirmed.