Jones, Chief Judge,
delivered the opinion of the court:
This is an action brought by the executors of decedent Margery S. Goodnow for the refund of an alleged overpayment of Federal estate taxes. It is claimed that the Commissioner of Internal Eevenue wrongfully included in decedent’s gross estate the value of the corpus of a trust through a misapplication of section 2086(a) (1) of the Internal Eev-enue Code of 1954, 26 U.S.C. (I.E.C. 1954) §2036(a)(1) (1958 Ed.). That section provides, as is pertinent:
§ 2086. TRANSFERS WITH RETAINED LIFE ESTATE.
(a) General rule.
The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer * * *, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
(1) the possession or enjoyment of, or the right to the income from, the property, * * *
*529 On May 28,1926, David F. Goodnow, decedent’s husband, entered into a trust agreement with, the Chatham Phenix National Bank and Trust Company whereby a revocable, unfunded life insurance trust was created with the company appointed trustee. Pursuant to this agreement, nine insurance policies on the life of Goodnow, having a total face amount of $200,000, were deposited with the company. The latter was also designated as the beneficiary under each policy. The trust instrument provided in part that, upon the death of Goodnow, the company would receive, hold and invest the insurance proceeds as the corpus of the trust, and pay the income from that corpus to Mrs. Goodnow for life or until her remarriage, with remainders over to the Good-now children (plaintiffs herein) or their issue.
In addition to granting Goodnow the power to modify, alter, or revoke the agreement in whole or in part, the trust instrument further gave to Goodnow the sole right to exercise any options with respect to the insurance policies included in the trust.
On the same day that the trust instrument was executed, Goodnow also entered into a deposit agreement with the trust company wherein he agreed to make, and the company agreed to receive, certain quarterly deposits for the purpose of paying premiums accruing under the policies in the future. Again on that same day, however, Goodnow received a letter from his wife which authorized him to cmake the requisite payments to the trust company under the deposit agreement out of her separate funds. She further authorized him to charge her funds with any additional amounts needed to pay premiums during the first year of operation of the deposit agreement, and all charges of the trust company for acting as trustee.
This method of paying the premiums on the policies included in the trust continued until December 9, 1927, when Goodnow advised the trust company that, in the future, the deposits necessary for the payment of premiums would be made directly to the company by his wife. This practice of providing funds to the corporate trustee for the purpose of paying premiums was then subsequently abandoned, and premium payments were thereafter made directly to the *530 insurance companies by Mrs. Goodnow. Thus, it is undisputed that, from the time the trust was established until the death of Goodnow on October 7,1947, all premiums paid for the purpose of maintaining the policies comprising the trust were paid by Mrs. Goodnow, either directly or indirectly, out of her separate property. It is this fact which gives rise to the dispute here involved.
The original trust instrument was subsequently amended on two occasions. The first amendment, executed on March 8, 1928, modified Goodnow’s right to exercise the options as to three of the policies so that they had to be exercised jointly by Goodnow and his wife during their concurrent lifetimes. Again, on February 9, 1929, the instrument was amended so as to provide that the trust income would be payable to Mrs. Goodnow during her lifetime regardless of whether she remarried. She was also appointed cotrustee with the corporate trustee, with certain limitations on her powers which are not here relevant. The remaining provisions of the trust were reaffirmed, and it retained these characteristics until Goodnow’s death several years later.
The nine insurance policies originally deposited with the trust company in 1926 had been applied for and procured by Goodnow on his own life at various times between August of 1916 and April of 1926. In 1932, however, Goodnow applied for and obtained two more life insurance policies, having a total face amount of $65,000. These policies were also made payable to the trust company pursuant to the trust agreement of May 28, 1926, as amended. Thus, at the time of Goodnow’s death in 1947, the policies comprising the corpus of the trust had a total face value of $265,000.
Upon Goodnow’s death, the entire value of the trust corpus (less $65,000 which he had borrowed from a Boston bank and for which ten of the policies had been assigned as security) was included in his gross estate for Federal estate tax purposes. This action was taken pursuant to the requirements of section 811(g) of the Internal Revenue Code of 1939, 26 U.S.C. (I.R.C. 1939) § 811(g) (1952 Ed.), on the ground that Goodnow had retained certain incidents of ownership in the policies. The trustees received the net proceeds of the insurance policies and, after reimbursing *531 Goodnow’s executors for the proportionate share of estate taxes allocable to the insurance proceeds, credited the principal of the trust with the balance of $156,806.59. This amount subsequently increased in value to $224,035.17 by the time of Mrs. Goodnow’s death in December of 1954.
The Commissioner of Internal Revenue determined, after the death of Mrs. Goodnow, that the entire value of the trust corpus as of the time of her death was also includible in her gross estate. It was his position, as set forth in a 90-day letter dated February 24, 1959, that she should be regarded as the real settlor of the insurance trust and, since the trust instrument provided her with a contingent life estate in the income therefrom, she had, in effect, made an inter vivos transfer of property with a retained life interest within the meaning of section 2036(a)(1) of the 1954 Code, supra. The resulting deficiency, plus interest, was consequently assessed and paid by plaintiffs in their capacity as Mrs. Good-now’s executors. A timely claim for refund was filed, rejected, and this suit followed.
The primary issue underlying this dispute is readily apparent and may be simply stated. That is to say, we are called upon to determine if, in the circumstances disclosed above, the corpus of the inter vivos trust is properly includi-ble in Mrs. Goodnow’s gross estate as a transfer of property with a retained income interest for life within the meaning of section 2036 (a) (1). To justify the inclusion of this property in decedent’s estate, it must clearly appear that the two requirements of that section have been complied with. Thus, there must have been a transfer of property by Mrs. Good-now and a retention for life (either vested or contingent) of the income from that property by her. Simple as the issue is to state, however, the application of these requirements to the facts here involved does present difficulties.
Arguing in support of the Commissioner’s determination, defendant reminds us, first of all, that the taxability of a transfer is not to be determined by the niceties of conveyances or the technicalities of contracts. The pertinent inquiry, rather, is a comparison of the substance and practical effect of what was actually done with the requirements of the appropriate section of the Internal Revenue Code.
*532 Defendant admits that, since the insurance policies comprising the corpus of the trust were procured by Goodnow some years earlier, Mrs. Goodnow did not in fact make an inter vivos transfer of the policies themselves to the trust. Nonetheless, defendant asserts that, looking at the substance of the entire transaction, Mrs. Goodnow should be regarded as the actual settlor of the trust for estate tax purposes because it was she who transferred the property (the premiums) which created the trust corpus (the insurance proceeds). The argument runs as follows: During the life of Goodnow, the only res which could form a part of the corpus were the bare promises of the insurance companies to pay a fixed amount into the trust upon his death. However, the value of those promises was entirely dependent upon the continued payment of premiums, payments which were admittedly made by Mrs. Goodnow. Hence, it was she who furnished the actual and legal consideration for the continued validity of the insurance companies’ promises to pay upon the death of her husband. Since decedent furnished the consideration for the creation of the trust, she was, in legal contemplation, the actual settlor thereof, even though in form it was created by her husband. The net result of this argument seems to be an implicit assumption on the part of defendant that Mrs. Goodnow, in effect, made an inter vivos transfer of the property constituting the trust corpus; i.e., the insurance proceeds. The fact that Goodnow actually transferred the policies themselves to the trust is of no legal significance.
Granting this premise, it is not difficult for defendant to argue that Mrs. Goodnow, as the real settlor, must be deemed to have retained, for life the income from the property she transferred, since such an estate was reserved to her by the express terms of the trust instrument. Consequently, it is said, both requirements for including the value of the trust corpus in Mrs. Goodnow’s gross estate under section 2036(a) (1) have been met.
Defendant cites three gift tax cases as lending credence to its argument. In Seligmann v. Commissioner, 9 T.C. 191 (1947), a husband had taken out insurance on his life which he subsequently transferred to an insurance trust. His wife *533 was designated income beneficiary of the trust for life. Thereafter, the wife paid all the premiums on the policies for a number of years. When the Commissioner sought to impose a gift tax on the premium payments, it was held that the wife’s payment of premiums was not a taxable gift because, to the extent she had a life estate in the trust, she could not make a gift to herself. To the same effect are the cases of Pleet v. Commissioner, 17 T.C. 77 (1951) and Commissioner v. Berger, 201 F. 2d 171 (2d Cir. 1953).
Defendant contends that, since the Federal estate tax and the Federal gift tax are to be construed in pari materia, the rationale of those cases is that, for estate tax purposes, the payment by the wife of insurance premiums for insurance on her husband’s life, the proceeds of which are payable to a trust of which she is the life beneficiary, constitutes a transfer by her in which she has retained the income for life.
A prerequisite to estate tax liability under section 2036 (a) (1) is that a “transfer” shall have been made. We have indicated that defendant stresses the idea that Mrs. Goodnow should be regarded as the real settlor of the trust; that is, she should be regarded as having created the insurance proceeds comprising the corpus of the trust through her payment of premiums. It is important to remember, however, that we are concerned with the precise issue of whether she made an inter vivos transfer of property within the meaning of section 2036(a) (1).
In our view, these two concepts are not identical as a matter of law. For example, had Mrs. Goodnow paid only the last premiums falling due under the policies prior to her husband’s death, it would be possible under defendant’s theory to say she had “created” the insurance proceeds in the sense that the policies would have lapsed otherwise for nonpayment of premiums. Obviously, whether she had made a “transfer” of the proceeds within the meaning of section 2036 (a) (1) would be quite a different matter. Consequently, speaking in terms of “creating” the trust, per se, tends to obscure the real issue and does not lead to its resolution.
Additionally, we are not persuaded that Goodnow can be deemed to have been simply the nominal grantor of the insurance trust, and his wife the real grantor thereof. This *534 is the thrust of defendant’s argument, based upon the fact of her payment of premiums. The record and exhibits before us demonstrate, however, that Goodnow had taken out all of the policies on his own life. Nine of them had been obtained at various times prior to the establishment of the insurance trust. He retained incidents of ownership relative to each policy throughout. As a matter of fact, it was for precisely this reason that the proceeds were included in his gross estate after his death. Further, most, if not all, of the policies embodied property rights of significant value to Goodnow, such as loan values, cash surrender values, extended insurance rights and paid-up insurance rights. Thus, it is not, in our opinion, accurate to describe these policies as merely embodying the bare promises of the insurance companies to pay a fixed amount upon the death of Goodnow. His interests were more substantial than that. Note that Goodnow was able to obtain loans to the extent of $65,000 from a Boston bank by using ten of the policies as security. On balance, then, we cannot hold that Goodnow was merely the nominal settlor of the insurance trust. As a practical matter, it appears, rather, that he himself transferred significant property rights to the trust.
It is clear, of course, that Mrs. Goodnow transferred, either directly or indirectly, the requisite funds for the payment of premiums. She was also entitled, under the express terms of the trust instrument, to the income from the insurance proceeds for life. The relevant inquiry here is, granting the transfer of property, whether her life estate under the trust amounts to a retention by Tier of a life estate in the property she transferred. It does not. She herself retained no interest in the funds she transferred. She did have a contingent life interest in the income from the insurance proceeds. This interest, however, was not retained by her in the funds she provided for the payment of premiums. It was granted to her by the express terms of the trust instrument executed by her husband. Further, there is no indication that the Goodnows agreed sub rosa that she should have a life estate in the trust income if she would make the requisite premium payments. This is particularly true in view of the fact that the trust instrument, as originally written, pro *535 vided that Mrs. Goodnow’s interest would terminate upon her subsequent remarriage.
In addition to the necessity of finding that Mrs. Goodnow herself retained a life interest in the property she transferred, it is also necessary to find, under section 2036(a) (1), that she retained the life interest in the same property she transferred. In other words, assuming arguendo that Mrs. Good-nowi herself retained a life interest, the question then ¡becomes whether she had a life interest in the premium payments she transferred. In order to justify such a conclusion, we would have to hold that, as a matter of law, the premium payments and the income from the insurance proceeds are one and the same. That this is obviously not the case may be seen from the fact that there is no necessary relationship between the premiums and the ultimate investment income. The premiums were not simply funnelled through the insurance companies and returned to Mrs. Good-now in another form. Bather, they were received by the insurance companies as the consideration for the promises contained in the insurance contracts. If there was any fun-nelling process at all, it ceased when the funds were received by the companies.
In view of the foregoing, we are of the opinion, and so hold, that the transaction here involved was not of the type comprehended by section 2036(a) (1). As a result, we conclude that the value of the trust corpus was improperly included in Mrs. Goodnow’s gross estate by the Commissioner.
Plaintiffs’ motion for summary judgment is granted, and defendant’s motion for summary judgment is denied. Plaintiffs are entitled to recover, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Buie 38 (c).
It is so ordered.
Dureee, Judge,- Laramorb, Judge; and Whitaker, Judge, concur.
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due thereunder, it was ordered on September 21,1962, that judg *536 ment for plaintiffs be entered for $95,243.41, together with interest, computed as provided by law, on $94,649.66 from March 16,1959, and on $593.15 from March 21,1956.

*0