The **NATIONAL CITY BANK OF CLEVELAND, Executor of the Estate of Pearl C. Dauby, Deceased, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 16637.

United States Court of Appeals
Sixth Circuit.

Dec. 30, 1966.

---

Duane L. Isham, Akron, Ohio (Wise, Roetzel, Maxon, Kelly & Andress, Akron, Ohio, on the brief), S. C. Andress, Timothy G. Ireland, Akron, Ohio, of counsel, for appellant.

Morton K. Rothschild, Dept. of Justice, Washington, D. C. (Richard M. Roberts, Acting Asst. Atty. Gen., Meyer Rothwacks, Loring W. Post, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee. Merle M. McCurdy, U. S. Atty., Bernard J. Stuplinski, Asst. U. S. Atty., Cleveland, Ohio, of counsel.

Before PHILLIPS, EDWARDS and CELEBREZZE, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a federal estate tax case, presenting the question of whether the proceeds of three life insurance policies on the life of decedent's husband are taxable to the estate of decedent as a transfer with a retained life income within the meaning of § 2036(a) (1) of the Internal Revenue Code of 1954, 26 U.S.C. § 2036 (a) (1).[1]

The executor of the estate of Mrs. Pearl C. Dauby sued for a tax refund of $19,834.52. The district court held that the insurance proceeds were taxable to the estate and dismissed the complaint. The executor has appealed, asserting that the district court was in error in holding that the insurance policies were includable in the gross estate of the decedent.

The case was tried on a stipulation of facts, the pertinent parts of which are an appendix to this opinion. No additional evidence was introduced.

The policies, totaling $60,000 in face amount, were issued in 1920 by the Mutual Life Insurance Company of New York upon the life of Jerome Dauby, husband of the decedent. The terms and provisions of the policies and the endorsements thereon were identical except

1. "§ 2036. Transfers with retained life estate

"(a) General rule.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, * * *"

as to the amounts of insurance coverage and the amounts of premiums. Mrs. Dauby was named as beneficiary. No optional mode of settlement was chosen at the time the policies were issued.

On December 31, 1935, Mr. Dauby selected a mode of settlement which was incorporated in an endorsement on each policy. The text of this endorsement is quoted in the stipulation (appendix hereto). Under the mode of settlement selected by the insured, Mrs. Dauby was designated as primary payee, and the two daughters of the insured were named contingent payees. In the event Mrs. Dauby survived the insured, alternate mode of settlement No. 1 was designated, under which interest payments were to be made annually to Mrs. Dauby as primary payee during her lifetime. At the death of Mrs. Dauby, the proceeds of the policies were to be distributed in equal shares to the daughters.

The policies provided that upon the death of Mr. Dauby, supplementary contracts would be issued to the beneficiaries in accordance with the mode of settlement. The beneficiaries were not authorized to surrender, assign or encumber their supplementary contracts.

On the same day that he selected this mode of settlement, Mr. Dauby also placed the following endorsement on each policy:

> "All Rights Reserved to the Beneficiary:
>
> "Anything in this policy to the contrary notwithstanding Pearl C. Dauby, wife of the Insured, if living, if not, Lillian D. Gries and Jean C. Dauby, daughters of the Insured, jointly or the survivor, if none be living the executors or administrators of the last survivor of said wife and said daughters of the Insured, some of the beneficiaries, without the consent and to the exclusion of the Insured, or any other beneficiary, or any other person, shall have the right to exercise every option, enjoy every privilege and receive every benefit conferred by this policy, or allowed by the Company (in-

cluding any income payments under any provision for Disability Benefits), and the right to change the beneficiary."

Mr. Dauby filed a federal gift tax return for the year 1935, reporting a gift of the three policies to Mrs. Dauby. Mrs. Dauby also filed a donee's gift tax return for the same year reporting receipt of the policies by way of irrevocable gifts.

Mr. Dauby died May 6, 1957, leaving his widow surviving. The wife never made any change in the designation of beneficiaries, nor did she borrow any amount on the policies, surrender any policy for cash or exercise her right to change the mode of settlement. Upon the death of Mr. Dauby, irrevocable supplementary contracts were issued to Mrs. Dauby and the two daughters pursuant to the mode of settlement that had been selected by him. During the period from the death of her husband until her death, August 6, 1958, Mrs. Dauby received the interest on the proceeds of the policies. After her death, the proceeds were paid in a lump sum to the two daughters, each daughter receiving $31,422.84 plus $255.32 interest.

I.

The principal question presented on this appeal is whether the proceeds of these policies are taxable to the estate of Mrs. Dauby under § 2036(a) (1) (footnote 1), as a transfer by her with a retained life income.

■ In his memorandum opinion, the district judge correctly held that three requirements must be present in order for § 2036(a) (1) to apply: (1) the decedent must have made an inter vivos transfer of her property; (2) decedent must have retained "the right to the income" from the transferred property; and (3) the retention must have been for decedent's life. 3 Merten's, Law of Federal Gift and Estate Taxation, § 24.07, at 470–71. Mrs. Dauby had the right to the income from the proceeds of the insurance policies and this right was

for the period of her lifetime. The determinative question is whether she made an inter vivos "transfer" of the policies.

As said in Goodnow v. United States, 302 F.2d 516, 520, 157 Ct.Cl. 526: "A prerequisite to estate tax liability under § 2036(a) (1) is that a 'transfer' shall have been made." 3 Merten's, § 24.06 at 468 says: "It is basic to the application of this section that decedent must * * * have made an inter vivos transfer." The title "Transfers with retained life estate" (emphasis supplied) is assigned to Regulations 20.2036.1, promulgated under this statute.

Under the facts of the present case we cannot find that Mrs. Dauby made any "transfer" within the meaning of the statute. At no time did she take any affirmative action whatsoever with respect to this insurance on the life of her husband. The policies were purchased by her husband. He selected the mode of settlement under which his widow received the life income from the proceeds. So long as her husband lived she had the right to change the beneficiary and mode of settlement, and could have exercised other incidents of ownership. These rights were never exercised. Without making any transfer or taking any affirmative action, Mrs. Dauby left undisturbed the mode of settlement which had been selected by her husband. Upon the death of her husband, all the incidents of ownership and powers which had been vested in her terminated except the right to receive the interest for the balance of her life. Her enjoyment of the life income did not come about as a result of any "transfer" made by her, but resulted from the "transfer" made by her husband in the selection of the mode of settlement.

In holding the policies to be taxable, the district judge said:

"Prior to Jerome Dauby's death, i. e., from 1936 to 1957, Pearl Dauby possessed all incidents of ownership previously held by Jerome Dauby, including the right to change beneficiaries and thereby revoke the mode of settlement elected by the insured * * * It must be presumed that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. As possessor and owner of all the meaningful incidents of ownership in the three insurance policies under the facts and circumstances shown, it must be presumed that Pearl Dauby intended and did accept that disposition of the insurance proceeds made at the time of Jerome Dauby's death in accord with his election. The fact that Pearl Dauby did not revoke the mode of settlement can be construed only as a silent acceptance of the transfer of the proceeds to her daughters with a retention of a life interest to herself."

■ We find nothing in the statute or legislative history to indicate an intention that the word "transfer" is to be given other than its usual meaning. Generally speaking, the language in a revenue statute, just as in any statute, is to be interpreted according to its ordinary significance. Commissioner of Internal Revenue v. Brown, 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75; Hanover Bank v. Commissioner of Internal Revenue, 369 U.S. 672, 687, 82 S.Ct. 1080, 8 L.Ed.2d 187; Helvering v. William Flaccus Oak Leather Co., 313 U.S. 247, 249, 61 S.Ct. 878, 85 L.Ed. 1310.

■ Giving the word "transfer" its ordinary meaning, we are not willing to hold that mere inaction, acquiescence or "silent acceptance," without more on the part of Mrs. Dauby, constituted a "transfer."

It is true that Mrs. Dauby paid a majority of the premiums on the policies. Payments of premiums by her did not make the insurance policies taxable as a transfer with retained life income under § 2036(a) (1). Goodnow v. United States, supra, 302 F.2d 516, 157 Ct.Cl. 526.

The Government argues that Mr. Dauby assigned all his rights to the policies on December 30, 1935, and that he alone could not have elected the mode of settle-

ment the following day; and that "it may reasonably be inferred that the insurance company would not have authorized its secretary to sign the two-page endorsement dated December 31, 1935, * * * unless the decedent, as assignee of the policies, had consented thereto by filing a written notice at the home office as provided in the terms of each policy." We do not construe the stipulation (appendix hereto) to support such a conclusion. To the contrary, we read the stipulation to mean that Mr. Dauby executed the assignments and the mode of settlement as contemporaneous acts. There is nothing in the stipulation to the effect that Mrs. Dauby ever executed a written consent or any other instrument in connection with the policies.

In each of the cases relied upon by the Government, some positive action which constituted a "transfer" was taken by the decedent with respect to the disposition of the property involved.

The widow selected the mode of settlement, thereby making a "transfer," in Savage v. United States, 331 F.2d 678 (C.A.2), cert. denied, 379 U.S. 892, 85 S.Ct. 165, 13 L.Ed.2d 95; In re Pyle, 313 F.2d 328 (C.A.3); Rundle v. Welch, 184 F.Supp. 777 (S.D.Ohio) and Morton v. Commissioner, 12 T.C. 380.

In Kinney v. Commissioner, 39 T.C. 728, the renouncing by the widow of the right to stock dividends was held to be a "transfer," whereas in Tuohy v. Commissioner, 14 T.C. 245, the election of the optional mode of settlement by the guardian of decedent was held to constitute a "transfer."

In United States v. O'Malley, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed.2d 145, the court held that a "transfer" of accumulated income produced by a trust was made by the decedent within the meaning of § 811(c) (1) (B) (ii) of the Internal Revenue Code of 1939. In that case the decedent was the grantor of the trust and one of the three trustees. The trust instrument provided that the trustees in their sole discretion could pay income to the beneficiary, or could accumulate it, in which event the income became a part of the principal of the trust. *O'Malley* presents a factual situation that differs from the present case, where the husband of the decedent purchased the insurance on his life and selected the mode of settlement under which Mrs. Dauby received the life income.

We hold that the decedent, Mrs. Dauby, did not make an inter vivos "transfer" of the insurance policies within the meaning of the statute and that therefore the insurance is not taxable to her estate under § 2036(a) (1).

## II.

The executor contends that Mrs. Dauby had a general power of appointment with respect to the insurance policies, and that this unexercised power does not render the policies taxable under the express provision of 26 U.S.C. § 2041, because it was created before 1942, relying upon Haggett v. Commissioner, 14 T.C. 325. The Government contends, on the other hand, that the 1935 endorsements operated to transfer to Mrs. Dauby all the incidents of ownership and that all interest in the policies became vested in her.

In view of our interpretation of the statute, the insurance policies and the endorsements as hereinabove discussed, we do not find it necessary to pass upon this power of appointment issue in the present case, because:

(a) If Mrs. Dauby had nothing more than a general power of appointment, it was created prior to 1942 and was never exercised, and is not subject to estate taxes under 26 U.S.C. § 2041. This section requires that the value of property with respect to which a general power of appointment was created on or before October 21, 1942, is includable in the gross estate only if the power is exercised by the decedent.

(b) If the endorsements operated to vest in Mrs. Dauby the complete ownership of the policies, this ownership continued only from the date Mr. Dauby endorsed the policies in 1935 until the date of his death May 6, 1957.

She was not the owner at the time of her death.

It seems clear that, regardless of whether Mrs. Dauby had a general power of appointment or whether she became the owner of the policies in 1935, she had sufficient powers to make the policies taxable to her estate if the powers had been created after October 21, 1942. 26 U.S.C. § 2041.

Whatever incidents of ownership may have been vested in the decedent, they terminated upon the death of her husband. After his death she no longer had the power to change the beneficiary or the mode of settlement. The supplementary contracts issued by the insurance company to her and her daughters were irrevocable. Upon the death of Mr. Dauby, the mode of settlement which had been selected by him in 1935 became final and conclusive as to his widow. Thereafter Mrs. Dauby had only the right to receive the interest on the proceeds during her lifetime. We assume that it was because Mrs. Dauby did not own the policies at the time of her death that the Commissioner asserted the right to tax under § 2036(a) (1) and not under § 2033.

### III.

By an amended answer, the Government averred that the face amounts of the three insurance policies here involved were reported as a part of the gross estate of Jerome Dauby in his estate tax return filed July 29, 1958, but were deducted as a part of the marital deduction so that they were not included in his net estate subject to federal estate taxes. The amended complaint charges that if Mr. Dauby retained any incidents of ownership in the policies after December 31, 1935, and if Mrs. Dauby was not the complete owner of them, the proceeds were includable in his estate and would not qualify for the marital deduction under Section 2056 of the Internal Revenue Code of 1954, 26 U.S.C. § 2056. The amended answer concludes as follows:

"WHEREFORE, defendant demands that in the event the Court finds for plaintiff on its claim, the judgment herein be reduced by the amount by which the plaintiff has underpaid the Federal Estate Tax of Jerome Dauby's estate."

The issue of equitable set-off raised by the amended answer was not passed upon by the district court because the policies were held to be taxable to the estate of Mrs. Dauby. Likewise, this issue was not argued before this court. In response to questions from the bench, attorneys for the executor stated that the proceeds of the policies were reported inadvertently and erroneously as a part of the gross estate of Mr. Dauby.

Under our interpretation of the policies and indorsements, we have held that as of the date of her death, and at all times after the death of her husband, Mrs. Dauby had no interest in the policies except the right to a life income. This interest was a "terminable interest" which could not qualify for the marital deduction under the express terms of § 2056. Upon the record before us, we do not express an opinion as to whether this life insurance was taxable to the estate of Mr. Dauby.

The judgment is reversed and the case is remanded to the district court for further proceedings not inconsistent with this opinion, including consideration of the issue of equitable set-off raised by the amended answer.

### APPENDIX

### STIPULATION

(Filed August 6, 1964.)

We the attorneys do hereby stipulate as follows:

1. In 1920 Jerome Dauby, husband of plaintiff's decedent, took out three insurance policies on his life with The Mutual Life Insurance Company of New York. Such policies were: No. 2735770, in the face amount of $30,000.00; No. 2738771, in the face amount of $20,000.00; and No. 2735774, in the face amount of $10,-000.00. Except as to their face and

premium amounts, the terms and provisions of all three policies, as well as their endorsements, were identical. * * * When such policies were issued, plaintiff's decedent Pearl C. Dauby was named as beneficiary and Jerome Dauby did not reserve the right to change the beneficiary and no mode of settlement was agreed upon.

* * * * * *

3. On June 22, 1926, the beneficiary of each of the policies was changed to the Cleveland Trust Company, Cleveland, Ohio, as trustee under a deed of trust dated June 16, 1926. The indorsement on each of the insurance policies with respect to this change of beneficiary, dated July 16, 1926, stated that

"The right to revoke this designation of beneficiary is reserved to the insured."

4. On April 27, 1933, the beneficiary of the three insurance policies in question was changed to the Cleveland Trust Company, Cleveland, Ohio, as trustee under an agreement dated April 4, 1933. The indorsement evidencing this change of beneficiary states:

"All rights reserved to the insured."

5. On December 31, 1935 said Jerome Dauby elected a mode of settlement under each of the policies which provided in part:

The insured has elected that if this policy matures as a claim by death, settlement of the amount payable shall be made as follows, provided, however, that any change of beneficiary hereunder shall constitute a revocation of this election of Mode of Settlement:

I. PAYEES. Pearl C. Dauby, wife of the Insured is hereinafter referred to as the primary payee and Lillian D. Gries and Jean C. Dauby, daughters of the Insured, are hereinafter referred to as the contingent payees.

II. IF THE PRIMARY PAYEE SHALL SURVIVE THE INSURED: The amount payable at the death of the Insured shall be settled by Mode of Settlement (1), interest payments being made annually to the primary payee, to continue during the lifetime of the primary payee.

If the primary payee shall die during the continuance of said Mode of Settlement (1) and if either or both of the contingent payees or any child of either contingent payee shall be living at the death of the primary payee, such settlement shall terminate at the death of the primary payee, and the principal sum thereunder shall be divided into such number of equal parts as shall equal the number of the contingent payees who shall be then living, plus the number of the contingent payees who shall have predeceased the primary payee and who shall leave a child or children living at the death of the primary payee. One such part shall be payable in a single sum to each then living contingent payee and one such part shall be payable in a single sum, respectively to the then living children, share and share like, of each deceased contingent payee.

The mode of settlement elected by Jerome Dauby as aforesaid was made a part of and appears as an endorsement to each policy * * *.

6. The policies provided that upon the death of Jerome Dauby supplementary contracts would be issued in accordance with the mode of settlement elections made under the policies. The policies further provided:

* * * If so specified in the written notice making election of one of the foregoing modes of settlement, but not otherwise, the supplementary contract may at any time be surrendered to the Company and the Company will pay for the legal surrender thereof, * * where mode of settlement (1) has been elected, the said net sum together with interest to the date of surrender * *. A payee who has not the right to surrender the supplementary contract to the Company shall not have the right to assign or encumber such contract or any part thereof or any installment accruing thereon * * *.

In electing the mode of settlements on December 31, 1935, as set forth above in paragraph 2 hereof, Jerome Dauby did not specify in any of the elections, or otherwise, that any of the beneficiaries could surrender the supplementary contracts to be issued under the policies.

7. On the same day Jerome Dauby made the aforesaid elections under said policies, he afterwards endorsed said policies as follows:

ALL RIGHTS RESERVED TO
THE BENEFICIARY:

Anything in this policy to the contrary notwithstanding Pearl C. Dauby, wife of the Insured, if living, if not, Lillian D. Gries and Jean C. Dauby, daughters of the Insured, jointly or the survivor, if none be living the executors or administrators of the last survivor of said wife and said daughters of the Insured, some of the beneficiaries, without the consent and to the exclusion of the Insured, or any other beneficiary, or any other person, shall have the right to exercise every option, enjoy every privilege and receive every benefit conferred by this policy, or allowed by the Company (including any income payments under any provision for Disability Benefits), and the right to change the beneficiary.

Each of the three policies so endorsed by Jerome Dauby had provisions permitting policy loans, change of beneficiaries, and surrender of the policy for its cash value. At no time during her lifetime, however, did plaintiff's decedent borrow any amount, change any beneficiary designation, or make any cash surrender with respect to any of the policies.

8. On February 3, 1936, Jerome Dauby filed a gift tax return for the year 1935 * * * reporting a gift of the three insurance policies in question to Pearl C. Dauby. On February 3, 1936, Pearl C. Dauby filed a donee's information return of gifts * * * reporting receipt of the three insurance policies in question by way of irrevocable insurance trust.

9. Under the supplementary contracts issued pursuant to the settlement modes elected by Jerome Dauby as aforesaid, upon his death, which occurred on May 6, 1957, interest payments were made to plaintiff's decedent while she continued to live, and upon her death August 6, 1958, the entire proceeds held by the insurance company were paid in lump sum to Lillian D. Gries and Jean C. Dauby, their daughters, each daughter receiving $31,422.84 plus $255.32 interest.

10. * * *.

11. On or about November 3, 1959 plaintiff, acting as the duly appointed and qualified Executor of the Estate of Pearl C. Dauby, Deceased, filed a federal estate tax return for the estate of the decedent, returning a taxable estate of $472,228.70 and a net estate tax payable in the amount of $125,524.03. Said tax was paid on or about November 3, 1959 by the decedent's estate to the District Director of Internal Revenue at Cleveland, Ohio. The aforesaid insurance proceeds were not included in said return as a part of decedent's taxable estate.

12. On or about June 23, 1961 defendant determined an additional tax in the amount of $18,014.12 on the estate of plaintiff's decedent, determining that the taxable estate of decedent should have been returned at $533,026.30. The principal reason for this determination was the defendant's position that the aforesaid insurance proceeds were includible in decedent's taxable estate. Said additional tax, together with $2043.74 interest, was paid on or about October 3, 1961 by the decedent's estate to the District Director of Internal Revenue at Cleveland, Ohio.

13. On or about October 30, 1961 plaintiff, acting in the aforesaid capacity, filed with the District Director of Internal Revenue at Cleveland, Ohio a claim for refund of federal estate tax paid on the decedent's estate in the amount of $19,834.52 (including $2043.74 interest), said claim for refund being based upon defendant's inclusion in the decedent's

estate of the aforesaid life insurance proceeds, or the value thereof, in the amount of $60,000.00. An exact copy of said claim for refund appears as Exhibit A to the complaint herein.

14. This suit was not commenced until after the expiration of six months from the date the aforesaid claim for refund was filed.

15. * * *.

16. That Jean C. Dauby mentioned in the indorsement to each of the subject policies is the same person as Jean D. Schwartz mentioned in the respective last wills and testaments of Pearl C. Dauby and Jerome Dauby.