**Albert Henry KASISHKE, Jr., Executor of the Estate of Olive M. Kasishke, Deceased, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 276–69.**

United States Court of Appeals, Tenth Circuit.

March 17, 1970.

Rehearing Denied April 29, 1970.

Robert P. Kelly, of Kelly & Gambill, Pawhuska, Okl., for appellant.

Thomas L. Stapleton, Washington, D. C. (Lee A. Jackson, Loring W. Post, and Michael B. Arkin, Attys., Dept. of Justice, and Lawrence A. McSoud, U. S. Atty., on the brief), for appellee.

Before BREITENSTEIN and HOLLOWAY, Circuit Judges, and CHRISTENSEN, District Judge.

CHRISTENSEN, District Judge.

This is an appeal by Albert Henry Kasishke, Executor of the Estate of Olive M. Kasishke, deceased, from a judgment denying a refund of federal estate taxes in the sum of $27,597.95, and statutory interest. It is claimed by appellant that the trial court erred in finding that the proceeds of an endowment insurance policy were includable in the gross estate of the decedent by virtue of either section 2036[1] or section 2039[2] of the Internal Revenue Code of 1954, and further erred in denying as a deduction from the gross estate under 26 U.S.C.A. § 2053, a $19,961.41 debt for money which had been borrowed by decedent from her son, appellant here, while she was acting as executrix of the estate of her husband Albert Henry Kasishke.

I

The case was heard upon a stipulation of facts, supplemented by a deposition and exhibits from which the following controlling circumstances are extracted.

In 1935 the decedent, Olive M. Kasishke, made application to the Mutual Benefit Life Insurance Company of Newark, New Jersey, for a single-premium, ten-year endowment, insurance policy in the face amount of $62,121, on the life of her husband, which was issued by the company on June 4, 1935, in consideration for payment by the decedent of a single premium of $49,999.95.

At the time the decedent applied for the policy, she reserved no right to change the beneficiary, no right of reinstatement of the policy, no surrender right, no right to any dividends, no right to apply for loans from the company, and no right to receive the proceeds as an endowment. However, the policy application, dated May 21, 1935, as amended the same day, was expressly incorporated into the policy, and provided in effect that the proceeds of the policy, whether payable upon the death of the decedent's husband, upon the lapse of the ten-year period over which the endowment policy was to mature, or upon the surrender of the policy to the company, were to be held in any event by the insurance company with monthly interest payments to be made to the decedent's husband during his lifetime and thereafter to the decedent during her lifetime if she sur-

---

1. 26 U.S.C.A. § 2036 (1967), which provides in the relevant part:
   *Transfers with retained life estate*
   (a) General Rule. The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
   (1) the possession or enjoyment of, or the right to the income from, the property, or
   (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

2. 26 U.S.C.A. § 2039 (1967), which provides in the relevant part:
   *Annuities*
   (a) *General.* The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement * * * if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.
   (b) *Amount includible.* Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. * * *

vived her husband, and upon the decedent's death to the decedent's son and the son's issue. Provision was also made for distribution of the principal fund after the deaths of the decedent, her husband and her son. The beneficiary's right of withdrawal was specifically withheld.[3]

The decedent, on June 4, 1935, made a gift of the insurance policy to her husband, Albert Henry Kasishke. A gift tax return was filed with the Internal Revenue Service and the decedent used her annual exclusion and specific exemption to eliminate any tax on the gift. On May 18, 1938, Albert Henry Kasishke, the husband-insured, renounced any right to exercise the right to surrender the policy as provided in Paragraph VII of the Amendment of the Application dated May 21, 1935. The policy matured on June 4, 1945, while Albert Henry Kasishke was still alive. The policy was thereupon turned over to the company and Interest Income Certificate No. E–53282 was issued by the company in strict accordance with the amendment to the application of May 21, 1935, and Option A referred to therein. The husband-insured died in 1950. Thereafter the income from the Interest Income Certificate was paid to the decedent until her death in 1963, and the decedent's son, appellant herein, is presently receiving the interest income.

In this suit for refund the trial court found that the $62,121 endowment fund constituted property transferred by the decedent to named beneficiaries in which she retained a right to the income therefrom for a period which did not end before her death.

Appellant asserts that "this finding is erroneous for the reason that the decedent did not retain a life interest in the same property she transferred; and the decedent's husband was the one who actually determined how the proceeds of the endowment insurance policy actually vested." This position is further amplified by appellant in his brief: "It was the relinquishment by decedent's husband

3. The amendment to the decedent's application, expressly made a part of the policy, provided, in pertinent part:
   I. If the Policy shall mature as a death claim during my lifetime, or if the Policy shall be surrendered in accordance with its terms by my said Husband, as hereinafter provided, or if the Policy shall mature as an Endowment, the proceeds of the Policy, or the Cash Surrender Value, as the case may be, shall be held by the Company, and Monthly interest payments thereon made as provided in Settlement Option A, as set forth on the other side hereof, to my said Husband, if living as the payments respectively fall due, otherwise to me, if thus (sic) living. * * * [Then follow provisions controlling upon the death of the survivor of the decedent and her husband and thereupon the following general provisions appear.]
   VI. The right of withdrawal is to be withheld.
   VII. It is to be understood, that, (sic) my said Husband may at any time after the Third anniversary of the date of the issuance of this Policy, surrender the Policy in accordance with its terms for its Cash Surrender Value, if said Cash Surrender Value shall equal or exceed $500.00, but only for the purpose of having said Value made payable in accordance with the provisions of Settlement Option A as above provided.

   Settlement option A, referred to in Paragraph I and Paragraph VII above quoted of the amendment is as follows:
   To have the whole, or any designated fraction, of the proceeds of the Policy retained by the Company until the death of the Beneficiary, the Company in the meantime to pay the Beneficiary interest on the amount so retained at the rate of three per centum per annum. Interest payments will be made Monthly, Quarter-annually, Semi-annually or Annually, as may be requested, and the first payment will be made at the end of the period selected. A pro rata interest payment will be made for the time expired between the date of the last interest payment and the date of the Beneficiary's death. Subject to the right of the Company to require three months' notice in writing, the Beneficiary may withdraw at any time the amount retained by the Company, unless the Company shall be otherwise directed, and upon such withdrawal the interest payments will cease.

of his right to surrender the policy that actually fixed the provisions whereby decedent was receiving interest income at the time of her death." Appellant primarily relies upon Goodnow v. United States, 302 F.2d 516, 157 Ct.Cl. 526 (1962) which held that an essential element of a retained life interest within the meaning of section 2036 is that decedent's retention of a life interest be in the same property the decedent transferred.

The appellee maintains that the decedent in substance purchased property in the form of a single-premium endowment, giving her husband the benefit of its use during his lifetime in the form of a life interest in the income, and retaining the income during her lifetime if he should predecease her, with remainders over; that the policy possessed insurance as well as endowment features for the first ten years of the life of the policy is immaterial, as are the assignment of the policy to the husband and the relinquishment by the husband of certain rights in view of the amended application of 1935 which circumscribed any rights the husband otherwise might have had and which assured from the beginning that he could not withdraw the fund. In short, it is said that any action of his could not cut off the life income interest reserved and assured to the wife by the amended application as incorporated into the policy.

Appellee relies primarily upon the terms of the statute itself and Commissioner of Internal Revenue v. Church's Estate, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 (1949); Richards v. Commissioner of Internal Revenue, 375 F.2d 997 (10th Cir. 1967); Commissioner of Internal Revenue v. Nathan's Estate, 159 F.2d 546 (7th Cir. 1947), cert. denied, 334 U.S. 843, 68 S.Ct. 1510, 92 L.Ed. 1767 (1948); Marks v. Higgins, 213 F.2d 884 (2d Cir. 1954); In re Pyle's Estate, 313 F.2d 328 (3d Cir. 1963). The government also asserts that Goodnow v. United States, 302 F.2d 516, 157 Ct.Cl. 526 (1962), *supra,* in principle supports its position.

We think, despite the wide range of argument here and the complex and somewhat confusing history of the single premium policy after its issuance, that the decision of the trial court in line with the argument of appellee is clearly correct. Little more need be done than to quote, as we have in the margin, specific provisions of the amended application dated the same day as and incorporated by reference into the original policy. These policy documents must be read in *pari materia.*

Under Option A, which was designated from the beginning as the controlling option for settlement by the amended application, the proceeds were to be retained by the company "until the death of the beneficiary" and in the meantime the company was to pay the beneficiary interest. The provision in Option A that the beneficiary may withdraw at any time the amount retained by the company was qualified by the phrase "unless the company shall be otherwise directed." In the amendment to the application, the company is specifically otherwise directed by Section VI that "The Right of Withdrawal is to be Withheld". In Section VII, every possible situation whereby the decedent's right to interest if she survived her husband might otherwise be defeated was forestalled. If her husband surrendered the policy in accordance with its terms, the surrender could be "only for the purpose of having said value made payable in accordance with the provisions of Settlement Option A as above provided." Section I of the Amendment read in connection with Settlement Option A, required that if the policy matured as a death claim during her lifetime, if the Policy should be surrendered by her husband as hereinafter provided (in Section VII), or if the policy should mature as an endowment, "the proceeds * * * shall be held by the Company and Monthly interest payments thereon made as provided in Settlement Option A * * * to my said Husband, if living as the payments respectively fall due, otherwise to me, if thus [then] living."

Notwithstanding the beclouding formal "gift" or "assignment" to and "surrender" by the husband, the decedent actually realized the interest during her lifetime which the original policy assured her she would realize in consideration of the payment of the single-premium at the time the policy was issued. We therefore must reject appellant's basic position, that "it was the relinquishment of decedent's husband of his right to surrender the policy that actually fixed the provisions whereby the decedent was receiving interest income at the time of her death."

As was the case in Richards v. C. I. R., 375 F.2d 997 (10th Cir. 1967), although in different circumstances, the three predicates for application of section 2036 of the Internal Revenue Code of 1954 are present: (1) there was an inter vivos transfer by decedent by trust or otherwise; (2) the decedent retained the possession or enjoyment of or the right to income from the property; and (3) such retention or reservation was for decedent's life or for any period not ascertainable without reference to her death or for any period which did not in fact end before her death.

■ All sorts of complicating circumstances may be resorted to, but once the substance of the transaction is determined to meet these requisites, mere form will not avail. And even though it may appear that a position partakes of substance, if its recognition would be defeating to the very purpose of the Act it is not readily to be accepted. United States v. Allen, 293 F.2d 916 (10th Cir.), cert. denied, 368 U.S. 944, 82 S.Ct. 378, 7 L.Ed.2d 340 (1961).

The trial court's judgment and finding that the proceeds of the policy in question are includable in the gross estate of the decedent under section 2036 are hereby affirmed. See Commissioner of Internal Revenue v. Church's Estate, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 (1949), supra; In re Pyle's Estate, 313 F.2d 328 (3d Cir. 1963), supra; Marks v. Higgins, 213 F.2d 884 (2d Cir. 1954);

Commissioner of Internal Revenue v. Nathan's Estate, 159 F.2d 546 (7th Cir. 1947), cert. denied, 334 U.S. 843, 68 S.Ct. 1510, 92 L.Ed. 1767 (1948); Burr v. Commissioner of Internal Revenue, 156 F.2d 871 (2d Cir. 1946), cert. denied, 329 U.S. 785, 67 S.Ct. 298, 91 L.Ed. 673 (1946). Compare Goodnow v. United States, 302 F.2d 516, 157 Ct.Cl. 526 (1962). We do not reach, and we express no opinion concerning the question of whether these proceeds would also be includable under section 2039 as "an annuity or other payment."

II

We do not believe that the district court erred in determining that the claim of the son, Albert Henry Kasishke, Jr., against the decedent's estate was not properly deductible pursuant to 26 U.S.C.A. § 2053. This section makes deductible, among other things, such claims against the estate "as are allowable by the laws of the jurisdiction * * * under which the estate is being administered."

It was stipulated that from May 31, 1961, to October 3, 1962, the appellant, Albert Kasishke, Jr., loaned to his mother, Olive M. Kasishke, as executrix of the estate of Albert Henry Kasishke, Sr., the sum of $20,350, and that this money was used by her in the operation of Alkay Oil Company, an asset of the estate of Albert Kasishke, Sr. The decedent, as executrix, repaid her son $388.50 on this loan, leaving an unpaid balance of $19,961.41, for which the son upon the mother's death presented a claim to the estate of the decedent Olive M. Kasishke which was approved by the county court having jurisdiction over her estate. The decedent and her son, as sole heirs of Albert Henry Kasishke, Sr., shared equally in the Alkay Oil Company's assets. The mother operated the company under the terms of her husband's will which expressly empowered her as executrix to operate during the administration of the estate any of its businesses to the extent she deemed this feasible, practical or for the best interest of the estate.

The loan from the son to the mother as executrix was in order to operate the husband's Alkay Oil Company business and was used for such purpose, and there has been no contention that the mother diverted the money to her own use. The assets of the company at the time of distribution had an approximate value of $98,000. In computing and reporting the federal estate tax liability of the mother's estate the son (appellant here), on behalf of his mother's estate, deducted from the value of the gross estate the sum of $19,961 as an approved claim against the mother's estate. Upon audit the Internal Revenue Service disallowed this deduction.

The trial court concluded that under the circumstances of this case "where the personal representative of an estate pursuant to the will of a decedent operates a business of the decedent in the administration of the estate, there is incident to this power the right to incur reasonable obligations in behalf of the estate" and that "in the absence of any wrongdoing on the part of the personal representative, the representative does not become personally liable for the debts so incurred." The lower court further concluded that if there were no such authority, the plaintiff under the circumstances here would be estopped from asserting the personal liability of his mother. As an alternative basis for the disallowance of the deduction it was determined that the right of contribution of the decedent from the assets of Alkay Oil Company which would be includable within her estate would warrant the same result.

█ To be deductible the claim must be a personal and enforceable obligation of the decedent existing at the time of her death. The mere fact that the claim has been allowed by the executor and approved *pro forma* by the probate court will not establish deductibility if the validity of the claim on the merits cannot be otherwise established. First-Mechanics Nat'l Bank v. Commissioner of Internal Revenue, 117 F.2d 127, 132 A.L.R. 1459 (3d Cir. 1940). The claim must be in fact and in law a valid charge against the estate in order to be deductible, and the federal court is not necessarily bound by the decree of the state probate court. Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). And the taxpayer has the burden of showing that the state law supports his contention. Bonney v. Commissioner of Internal Revenue, 247 F.2d 237, 239 (2d Cir. 1957), cert. denied, 355 U.S. 906, 78 S.Ct. 333, 2 L.Ed.2d 261. In the absence of a controlling decision by the state court, a federal district court's interpretation of local state law will be disturbed on appeal only if the appellate court is convinced that the interpretation is clearly erroneous. Parsons v. Amerada Hess Corporation, 422 F.2d 610 (10 Cir. 1970); Scott v. Stocker, 380 F.2d 123, 126 (10th Cir. 1967); Jamaica Time Petroleum, Inc. v. Federal Ins. Co., 366 F.2d 156, 159 (10th Cir. 1966), cert. denied, 385 U.S. 1024, 87 S.Ct. 753, 17 L.Ed.2d 674 (1967); Bushman Constr. Co. v. Conner, 351 F.2d 681 (10th Cir. 1965), cert. denied, 384 U.S. 906, 86 S.Ct. 1340, 16 L.Ed.2d 358 (1966); First Nat'l Bank & Trust Co. v. Foster, 346 F.2d 49, 51 (10th Cir. 1965).

█ The law is well settled in Oklahoma that an executor or administrator is individually liable for contracts made by him in the course of the administration of the estate unless he stipulates against personal liability. Vaughn v. Jones, 179 Okl. 545, 66 P.2d 504 (Okl. 1937); Phelps v. Exchange Bank of Commerce, 181 Okl. 145, 73 P.2d 137 (1937). As is stated in the *Vaughn* case:

This rule does the defendant no injustice. Under section 1330, O.S.1931 (58 Okl.St.Ann. § 525), on the settlement of his accounts as executor, he is "allowed all necessary expenses in the care, management and settlement of the estate," if the county court deems it proper.

66 P.2d at 505.

There was no occasion for the settlement or allowance of the expense in question by the mother or a determination of contributions prior to its being filed as a claim against her estate by her son. So far as the record discloses, no claim of personal liability had been made by the son during his mother's lifetime. Most of the cases cited by appellant involve actions at law under facts quite dissimilar. The problem here is essentially equitable. Ryan v. Alexander, 118 F.2d 744 (10th Cir.), cert. denied, 314 U.S. 622, 62 S.Ct. 72, 86 L.Ed. 500 (1941). The Oklahoma court in a related context has been sensitive to equitable considerations. In re Fullerton's Estate, 375 P.2d 933 (Okl.Sup.Ct.1962). No Oklahoma case involving the present equitable considerations in point has been cited nor can we find any. We are not convinced that the determination of the lower court in the interpretation of Oklahoma law is clearly erroneous.

Affirmed.